PETER E. PARK v. THE DETROIT FREE PRESS COMPANY.

*Constitutional law—Libel—Act of 1885—Criminal charge— Bastardy—Privilege—Files in civil case—Evidence— Damages.*

1. Act No. 233, Laws of 1885, as amended by Act No. 139, Laws of 1887, limiting the recovery in suits brought for libel in certain cases to actual damages, as defined in said act, is not within the power of constitutional legislation.

2. In an action for libel the plaintiff may show that various other persons called his attention to the libelous article.

3. The mischief of a libel consists in the fact that it is actually seen by third persons, and the circulation of a paper is allowed to be shown, as making it probable that the article has been read by several persons.

4. There is no rule of law which authorizes any but the parties interested to handle the files or publish the contents of their matters in litigation.

5. One of the reasons why parties are privileged from suit for accusations made in their pleadings is that their pleadings are addressed to courts where the facts can be fairly tried, and to no other readers.

6. The public have no rights to any information on private suits till they come up for public hearing or action in open court; and, when any publication is made involving such matters, they possess no privilege, and the publication must rest on either non-libelous character or truth to defend it.

7. It has been uniformly held that the public press occupies no better ground than private persons publishing the same libelous matter, and, so far as actual circulation of libels is concerned, there can be no question which is more likely to spread them.

8. Any one, whether reporter or otherwise, who undertakes to give to the public the contents of a document which speaks for itself, and in which he has no personal concern, is bound, if he would reduce his liability, to use such a degree of care as is reasonably sure to prevent mistake, and to publish nothing not so obtained, which will inure to the injury of another.

9. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—When a man is charged with doing what if done by him

can be nothing else than a crime, it cannot be said not to involve a criminal charge because other persons might not be so guilty.

b—It is the thing charged on the person libeled as done by him, and not by some one else, which makes the libel. It must especially injure him, if believed, among those who know him personally, and if to them the charge made involves a crime, the degree of which makes it disgraceful, it involves it none the less because the publisher did not so consider it by mistake of fact or law.

c—There is no room for holding in a constitutional system that private reputation is any more subject to be removed by statute from full legal protection than life, liberty, or property. It is one of those rights necessary to human society that under-lie the whole social scheme of civilization. It is a thing which is more easily injured than restored, and where injury is capable of infinite mischief; and, on the other hand, it is one where the injury is frequently, and perhaps generally, aggra-vated by malice. The law has therefore always drawn distinctions between intentionally false and wicked assaults on character, and those which were not actually designed to create a false impression, although necessarily tending to injure reputation if false in fact, but it has made both actionable.

d—It is not competent for the Legislature to give one class of citizens legal exemption from liability for wrongs not granted to others; and it is not competent to authorize any person, natural or artificial, to do wrong to others without answering *fully* for the wrong.

Error to Wayne. (Gartner, J.) Argued October 9 and 10, 1888. Decided November 28, 1888.

Case for libel. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*James H. Pound,* for appellant.

*Black, Moran, Wilkins & Gray,* for defendant.

CAMPBELL, J. Plaintiff sued defendant for publishing a libel against him to the effect that he had been the day before, which was June 23, 1888, arrested and brought before one of the justices in Detroit on a charge of bas-

tardy, and on his plea of not guilty was released on his personal recognizance to appear on June 29 for his preliminary examination.

To this cause of action the defendant pleaded the general issue, with notice of special defense, to the effect that one of its reporters, who was a prudent and skillful person, obtained the information in good faith from the clerk of the court, and that it was published without malice or negligence, and is claimed to be privileged; that on the next day a correction was published as conspicuously as the libel, to the effect that the plaintiff was the attorney for the prosecution, and not the defendant in the bastardy case, and that the mistake occurred through the justice's clerk, who gave plaintiff's name as the defendant, and that on the file-wrapper plaintiff's name was so placed as to appear as defendant; that everything was done in good faith, and that the falsehood was due to mistake. / Defendant claimed that under the statute nothing but actual damages, within the limited statutory definition of that term, could be recovered.

Upon the trial proof was made of the publication of the libel, and of the circulation of the paper, and that plaintiff was and had been for several years a married man, and a member of the Detroit bar, and the father of children. On cross-examination, plaintiff testified that he was employed to prosecute Clixby, the defendant in the bastardy case, and was not present in court when he was arrested, but attended the examination subsequently and after the libel was published. There was some conflict as to what occurred, subsequently to the publication of the libel, in the clerk's office, between Mr. Kinney, the clerk, and Mr. Robison, the reporter; and some conflict whether Robison got his information from the clerk, or from examining the file. The justice swore positively

that Robison asked him about the case as the Clixby case first, and that he referred him to the clerk, and Robison denied that he saw the justice at all. There was also a conflict whether Robison knew plaintiff.

_' 3 apology was published the day after the libel. Above it was an open heading, reading as follows:

"Record of the Courts. The legal Mills are Grinding Chiefly on Matrimonial Misunderstandings. Correction of an Annoying Error. Probate Notes. Miscellany. Correction of an Annoying Error."

This was published in the same part of the paper with the libel. It is not disputed that, so far as plaintiff is concerned, it was a full retraction.

Several questions are presented concerning the reception and rejection of evidence. The court below instructed the jury at some length, but to the general effect that the liability of the defendant was relieved by the statute of 1887 by the retraction, if there was no bad faith; that the article charged no crime, unless the reporter had reason to believe the plaintiff was married; that the fact that the plaintiff was not living with his family—his wife being insane—was one of the facts to be taken into consideration, as well as his not being known to the reporter; that if the case was within the statute, no actual damages having been shown, there could be no recovery. Further reference will be made to the charge more specifically. The jury under the charge, although not positively, were practically, ordered to find, and did find, for the defendant.

As the statutes of 1885 and 1887 were the decisive element in finding a verdict for the defense without even nominal damages, that question requires first attention.

By Act No. 233, Laws of 1885, it was enacted that, in suits brought for the publication of libels in any newspaper, the plaintiff should only recover actual damages if

it shall appear that the publication was made in good faith, and did not involve a criminal charge, and its falsity was due to mistake or misapprehension of the facts; and that in the next regular issue of said newspaper after such mistake or misapprehension was brought to the knowledge of the publisher or publishers, whether before or after suit was brought, a correction was published in as conspicuous a manner and place in said newspaper as was the article sued on as libelous. By section 3 of the act of 1885, it was enacted:

" The words 'actual damages' in the foregoing section shall be construed to include all damages the plaintiff may show he has suffered in respect to his property, business, trade, profession, or occupation, and no other damages."

The statute of 1887 merely changed the words "the foregoing section" to "this act." Laws of 1887, p. 153.

This act was held by the court below to exempt defendant, because bastardy is not in the strict sense a criminal proceeding, unless the defendant or Robison knew, or should have known, plaintiff to be a married man, so that the charge would be adultery.

If the case depends on that statute, and if that statute is valid, the construction given goes beyond the language, and does not seem to be the proper one. When a man is charged with doing what if done by him can be nothing else than a crime, it cannot be said not to involve a criminal charge, because other persons might not be so guilty. It would lead us into conjecture to seek out any meaning in this statute beyond the language. There seems to have been an idea in the minds of its framers that charges of crime were so much more heinous than other charges as to make it proper to punish them in heavy damages in spite of good faith, when charges of things not crimes are treated as comparatively trivial.

But every one knows that there are many technical crimes involving no infamy, and acts not indictable which are utterly disgraceful. We can hardly imagine the Legislature meant to disregard the common-sense rule that it is the thing charged on the person libeled as done by him, and not by some one else, which makes the libel. It must especially injure him, if believed, among those who know him personally, and if to them the charge made involves a crime, the degree of which makes it disgraceful, it involves it none the less because the publisher did not so consider it by mistake of fact or law.

But we do not think the statute controls the action, or is within the power of constitutional legislation. This will, in our judgment, appear from a statement of its effect if carried out. It purports to confine recovery in certain cases against newspapers to what it calls "actual damages," and then defines actual damages to cover only direct pecuniary loss in certain specified ways, and none other. In some of these defined cases the proof of any damages in this sense would be impracticable, and in all it would be very difficult. They are confined to damages in respect to property, business, trade, profession, or occupation. It is safe to say that such losses cannot be the true damage in a very large share of the worst cases of libel. A woman who is slandered in her chastity is under this law usually without any redress whatever. A man whose income is from fixed investment or salary or official emolument, or business not depending upon his repute, could lose no money directly unless removed from the title to receive his income by reason of the libel, which could seldom happen. If contradicted soon, there could be practically no risk of this. And the same is true concerning most business losses. The cases must be very rare in which a libel will destroy business profits in such a way that the loss can be

directly traced to the mischief. There could never be any loss when employers or customers know or believe the charges unfounded. The statute does not reach cases where a libel has operated to cut off chances of office or employment in the future, or broken up or prevented relationships not capable of an exact money standard, or produced that intangible but fatal influence which suspicion, helped by ill will, spreads beyond recall or reach by apology or retraction. Exploded lies are continually reproduced without the antidote, and no one can measure with any accurate standard the precise amount of evil done or probable.

There is no room for holding in a constitutional system that private reputation is any more subject to be removed by statute from full legal protection than life, liberty, or property. It is one of those rights, necessary to human society that underlie the whole social scheme of civilization. It is a thing which is more easily injured than restored, and where injury is capable of infinite mischief. And, on the other hand, it is one where the injury is frequently, and perhaps generally, aggravated by malice. The law has therefore always drawn distinctions between intentionally false and wicked assaults on character, and those which were not actually designed to create a false impression, although necessarily tending to injure reputation if false in fact, but it has made both actionable.

This statute has not apparently attempted to relieve any persons but the publishers of newspapers from responsibility for every injury to character by libel, whether intentionally false or not. If a person not a publisher had written in a letter just what this paper published, and had done so under the same impression which Mr. Robison had, the statute would not save him from full responsibility for the damages of all kinds, to which the general rules of law have always subjected persons guilty

of libel. While the statute is certainly ambiguous, we cannot attribute to the Legislature the monstrous wrong of shielding the intended malice of writers, who impose on fair-minded publishers, from responsibility for newspaper libels, because the publishers themselves may be innocent of deceit, or of making the publishers responsible for the full degree of actual malice in the writer who misinforms them. In the present case the reporter himself admittted that he was not disposed to make as full a retraction as the managers required him to make, but their good faith should not be impugned by his reluctance.

It is not competent for the Legislature to give one class of citizens legal exemptions from liability for wrongs not granted to others; and it is not competent to authorize any person, natural or artificial, to do wrong to others without answering fully for the wrong. We do not think this statute has any bearing on the case, and the court erred in making it control.

As the case must go back for a new trial it is necessary to notice some other questions likely to arise again, and which probably might have been differently decided had the statute been left out of view.

Plaintiff was not allowed to show that various other persons called his attention to the libelous article. We can see no reason why such facts were not pertinent. The mischief of a libel consists in the fact that it is actually seen by third persons. The circulation of a paper is allowed to be shown, as making it probable that the article has been read by several persons. Evidence of actual knowledge cannot be inferior to presumption. In *Steketee v. Kimm,* 48 Mich. 322 (12 N. W. Rep. 177), a claim was made that there could be no presumption in an American community that articles in Dutch would be read by any one; but we had no difficulty in finding that

Hollanders could and might do so. It would certainly have been proper in that case to show that Hollanders actually did read the libel, and there was convincing proof that it affected the plaintiff's business. In many, if not most, cases, actual pecuniary injury to business could not be shown without incidentally or directly indicating that there must have been individual readers.

There was a good deal of testimony in the case admitted, under objection, from reporters, and perhaps some others, concerning difficulty in getting personal access to files of the justices, and how they usually obtained information as to their contents, and upon what information they acted. The testimony was conflicting on this.

The whole defense in this case rested on the claim that bastardy proceedings are not criminal, but rest on the footing of civil remedies. There is no rule of law which authorizes any but the parties interested to handle the files or publish the contents of their matters · in litigation. The parties, and none but the parties, control them. One of the reasons why parties are privileged from suit for accusations made in their pleadings is that the pleadings are addressed to courts where the facts can be fairly tried, and to no other readers. If pleadings and other documents · can be published to the world by any one who gets access to them, no more effectual way of doing malicious mischief with impunity could be devised than filing papers containing false and scurrilous charges, and getting those printed as news. The public have no rights to any information on private suits till they come up for public hearing or action in open court; and, when any publication is made involving such matters, they possess no privilege, and the publication must rest on either non-libelous character or truth to defend it. A suit thus brought with scandalous accusations may be discontinued without any attempt to try it, or on trial

the case may entirely fail of proof or probability. The law has never authorized any such mischief. In *Scripps v. Reilly*, 35 Mich. 371, 38 Id. 10, this Court found it necessary to decline accepting the doctrine of privilege in such cases. It has been uniformly held that the public press occupies no better ground than private persons publishing the same libelous matter, and, so far as actual circulation of libels is concerned, there can be no question which is more likely to spread them. It is undoubtedly true that there is a somewhat general taste and curiosity for knowledge about other people's affairs which has called into existence a class of newsgathering that is designed to gratify that taste without circulating falsehoods, and it is easy enough to see that mistakes may occur without any improper purpose, and in spite of care. But when the mistake does occur, and leads to mischief, the party injured cannot be called upon to suffer for the public amusement or entertainment.

Any one, whether reporter or otherwise, who undertakes to give to the public the contents of a document which speaks for itself, and in which he has no personal concern, is bound, if he would reduce his liability, to use such a degree of care as is reasonably sure to prevent mistake, and to publish nothing not so obtained, which will inure to the injury of another. There can be no different standard applied to reporters than to others, and the rule laid down by the court that such care as reporters generally use is the standard, is not a correct rule. It may be true that they are usually careful; and in *Tryon v. Association*, 39 Mich. 636, it was held libelous to charge a reporter with violating confidence, as having a direct tendency to injure him in his calling. Any rule which should put the press and its managers on a less honorable footing would lessen public confidence, and help nobody. But their work in such matters is not privileged.

The subject of relative responsibility was recently considered in *Bronson v. Bruce*, 59 Mich. 467 (26 N. W. Rep. 671), and it was held that all persons must be treated as alike responsible.

There was a reference in the opinion below to the plaintiff, as not living with his family, as a consideration to be taken into view in dealing with the reporter's knowledge; and such reference was made to it on the argument in this Court as to indicate that stress may have been laid on it improperly, and with a wider bearing. There was nothing to indicate that the reporter's action or acquaintance with plaintiff could have been in any way affected by this fact. The only evidence on the subject indicated that plaintiff was unfortunate enough to have an insane wife. How this could be allowed to operate to his prejudice or affect his standing we cannot see.

While there is a good deal more that is open to criticism on the record, it is evident that the view taken of the legislation upon newspapers colored the entire case. The questions presented have been dealt with so often in this Court that we cannot suppose the circuit judge meant to disregard our rulings. When it is understood that the case is governed by the rules heretofore applied in similar cases, there is not much more that needs to be suggested. It cannot be claimed that the article was not libelous. Neither can it be claimed, even under the statute, that a retraction removes the liability. The law as to mitigation has been very fully settled already.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.