OSBORN v. LEACH.

(Filed May 27, 1904).

1. LIBEL—*Officers—Burden of Proof—Newspapers—The Code, sec. 525.*

A publication by a newspaper that a director of the state's prison is guilty of a gross breach of official duty and the receipt of money illegally is libelous *per se*, and the burden is on the defendant to prove the truth thereof or matter in mitigation.

2. LIBEL—*Constitutional Law—Const., N. C., Art. I, secs. 20, 35—Acts 1901, ch. 557—Damages.*

An act taking away from a person the right to recover punitive damages in case of libel is constitutional.

3. LIBEL—*Burden of Proof—Questions for Jury—Damages.*

In an action for libel against a newspaper, the paper having pleaded a retraction of the publication, it is necessary for the defendant to show that the publication was made in good faith, and with reasonable ground to believe it to be true, in order to relieve the paper from punitive damages.

4. DAMAGES—*Libel—Mental Anguish—Newspapers.*

Actual damages include pecuniary loss, physical pain, mental suffering, and injury to reputation.

5. LIBEL—*Constitutional Law—Newspapers.*

Where a statute for libel applies equally to all newspapers and periodicals, it does not amount to an unconstitutional discrimination.

6. LIBEL—*Notice—Pleadings—Demurrer.*

In an action against a newspaper for libel the failure of the complaint to allege the five days' notice renders it demurrable.

7. LIBEL—*Notice—Pleadings—Amendment.*

Where a demurrer was sustained to a complaint for libel against a newspaper because it failed to appear that notice of the action had been given, the trial court may permit an amendment showing that fact.

8. LIBEL—*Notice—Damages—Newspapers.*

   In an action for libel against a newspaper the failure to give notice
      of the action as required only relieves the paper of punitive
      damages.

9. LIBEL—*Notice—Newspapers.*

   In an action for libel, where the newspaper publishes a retraction,
      no notice as required by acts 1901, ch. 557, need have been
      given.

ACTION by W. H. Osborn against M. T. Leach and the
News and Observer Publishing Company, heard by *Judge
O. H. Allen* and a jury, at December Term, 1903, of the
Superior Court of GUILFORD County. From a judgment for
the defendants the plaintiff appealed.

*King & Kimball, J. T. Morehead* and *T. M. Argo,* for the
plaintiff.

*J. A. Barringer, Armistead Jones & Son,* for defendant
Leach.

*Busbee & Busbee* and *Brooks & Thompson,* for the defend-
ant News and Observer Publishing Company.

CLARK, C. J.   This is an action for libel against M. T.
Leach and the News and Observer Publishing Company.
Judgment by default for want of an answer and inquiry
had been taken against the defendant Leach.  132 N. C.,
1149; S. C., 133 N. C., 27.  In the trial upon the merits,
at the close of the plaintiff's evidence the defendant Leach
moved to dismiss "upon the ground that the newspaper arti-
cle alleged to be libelous was not libelous, and that the plain-
tiff had not alleged a cause of action."  The Court being
of that opinion instructed the jury (on account of the judg-
ment by default and inquiry) to return a verdict of one
penny as to Leach, and thereupon rendered a judgment

against him for one penny damages and one penny costs. The Code, section 525, subsection 4.

In this there was error. The publication inspired by[1] the defendant Leach charged that the plaintiff bought for the State's Prison, of which he was a director, certain mules, giving twenty-seven dollars per head more than they were worth, and paying for horses double what they were worth, thus depriving the State's Prison of that sum, and charged further that the plaintiff received for his services five dollars for each mule bought, as commissions, besides his expenses and several hundred dollars for his time, when, as director, by law, he was entitled to four dollars per day only (Laws 1899, chapter 24, sections 4, 9, 10). This, if not a direct charge of fraud is at least an allegation of a gross breach of official duty and misconduct by the plaintiff as director of a State institution, and incompetence, if not worse, in the purchase of the mules and horses, and the receipt of pay in excess of that allowed by law. This language was libelous *per se* (*Ramsey v. Cheek,* 109 N. C., 270), and the burden was upon the defendant to prove their truth or matter in mitigation.

As to the other defendant, the News and Observer Publishing Company, the Court allowed the motion made to dismiss upon the grounds (1) "that the plaintiff had not given it the notice required by chapter 557, Laws 1901; (2) that the plaintiff had not made out a case against it; and (3) upon the further ground that the plaintiff's counsel admitted in open court that the plaintiff had not sustained and did not claim any special damage." The second ground is disposed of by what is said above. The article was not copied from any paper which had then been filed in any legal proceeding, but was an oral statement by the defendant Leach to the reporter of the *News and Observer* of what he intended to file. The burden was upon the defendant Publishing

Company to prove the truth of the publication or to prove the absence of malice.

· The other two points raise the question of the constitutionality of chapter 557, Acts 1901, commonly known as the "London Libel Law." That statute has been adopted in several States in almost the identical words of our statute. It has been already presented in the Supreme Court of two of our sister States and has been held to be unconstitutional in both, but because of the addition of words restricting "actual damages" to mean special damages, which words are not in our statute.

The Constitution of North Carolina provides: "All courts shall be open, and every person, for an injury in his lands, goods, person, or *reputation, shall* have remedy by due course of law." Article I, section 35. "The freedom of the press ought not to be restrained, *but every individual shall be held responsible for the abuse of the same.*" Article I, section 20.

If, therefore, this chapter impairs the right of any one to recover for an injury to his reputation, or abridges the responsibility of the press for an abuse of the freedom of the press, the Legislature is clearly forbidden by the above sections of the Constitution from the enactment of such statute.

Section 1, chapter 557, Acts 1901, is as follows: "Before any proceedings, either civil or criminal, shall be brought for the publication in a newspaper or periodical in this State of a libel, the plaintiff or prosecutor shall at least five days before instituting such proceedings serve notice in writing on defendant or defendants, specifying the article and the statements which he alleges to be false and defamatory. If it shall appear upon the trial that said article was published in good faith, that its falsity was due to an honest mistake of the facts, and that there were reasonable grounds for believing that the statements in said article were true,

and that within ten days after the service of said notice a full and fair correction, apology and retraction were published in the same editions of corresponding issues of the newspaper or periodical in which said article appeared, and in as conspicuous place and type as was said original article, then the plaintiff in such case, if a civil action, shall recover *only actual damages,* and if in a criminal proceeding, a verdict of guilty shall be rendered on such a state of facts, the defendant or defendants shall be fined a penny and costs and no more; provided this act shall not apply to existing suits." It must be noted that there is no penalty on the plaintiff nor any exemption to the defendant if the plaintiff does not chose to give the five days' notice, but there is merely a provision that five days' notice must be given by the plaintiff, in the manner stated, before issuing his summons, and that when such notice is given, then if within ten days the specified retraction is made, and it appears that the article was printed in good faith by honest mistake and with reasonable ground to believe the statements to be true, the plaintiff can only recover actual damages. It was, therefore, error in the Court to nonsuit the plaintiff, because good faith, honest mistake and reasonable ground of belief were affirmative defenses which the Court could not adjudge. But independently of that, as the argument raises the constitutionality of the act, it is well to dispose of it.

The plaintiff is entitled to recover actual damages under the Act of 1901; and actual are compensatory damages, and include (1) pecuniary loss, direct or indirect, *i. e.,* special damages; (2) damages for physical pain and inconvenience; (3) damages for mental suffering; and (4) damages for injury to reputation. Punitive damages are not included in what is termed actual or compensatory damages, and the act, upon the conditions therein specified, relieves and can relieve a defendant only against a claim for that particular

kind of damages. Punitive damages are awarded on grounds of public policy and not because the plaintiff has a *right* to the money, but it goes to him merely because it is assessed in his suit. 18 Am. & Eng. Ency. (2 Ed.), 1901; *Wallace v. Railroad,* 104 N. C., 452.

The right to have punitive damages assessed is, therefore, not property. The right to recover actual or compensatory damages *is property.*

In our case the law presumes injury to the feelings, mental anguish, and injury to the reputation, the publication being libelous *per se.* The evidence of the plaintiff, besides, proves both these elements, and also physical suffering. There is no evidence of special damages, and it is not inferred. The plaintiff is entitled to recover compensation for mental and physical pain and injury to reputation. These are *actual* damages, and these are *property.* "The right to recover damages for an injury is a species of property and *vests* in the injured party immediately on the commission of the wrong. It is not the subsequent verdict and judgment but the commission of the wrong that gives the right. The verdict and judgment simply define its extent. Being property, it is protected by the ordinary constitutional guarantees." Hale on Damages, page 2, note 5 ; Cooley Const. Lim. (5 Ed.), 445. It cannot be *extinguished* except by act of the parties or by operation of the statute of limitation. *Ibid.*

This being an action upon a libel *per se* the plaintiff has a right to recover *compensatory* damages. Newell on S. & L., 43 ; Hale, *supra,* page 99. Compensatory damages include all other damages than punitive, thus embracing not only special damages as direct pecuniary loss, but injury to feelings, mental anguish and damages to character or reputation. 18 Am. & Eng. Ency. (2 Ed.), 1082, *et seq,;* Hale, *supra,* 106 and 99. Actual damages are synonymous with compensatory damages and with general damages. Newell,

*supra,* 839; 18 Am. & Eng. Ency. (2 Ed.), 1081, *et seq.*
Damages for mental suffering are actual or compensatory.
They are not special nor punitive, and are given to indemnify
the plaintiff for the injury suffered. 1 Am. & Eng. Ency. (2
Ed.), 602. The law infers actual or compensatory damages
for injury to the feelings and reputation of the plaintiff
from a libel calculated to humiliate him or injure his repu-
tation or character.

In similar statutes adopted in other States the following
words were added (which are wisely omitted in our stat-
ute), *i. e.,* that actual damages shall mean only "such dam-
ages as the plaintiff has suffered in respect to his property,
business, trade, profession or occupation." And on account
of the inclusion of those words, which restrict actual dam-
ages to mean special damages, the act has been held uncon-
stitutional in most conclusive opinions by very able courts,
both in Kansas and Michigan.

In a recent opinion, *Hanson v. Krehbiel,* filed March 12,
1904, the Supreme Court of Kansas, 75 Pac., 1041, passing
upon the constitutionality of chapter 249, Laws 1901, of that
State (which is *verbatim* our libel law, chapter 557, Laws
1901, save the addition in the Kansas statute of the definition
of actual damages, as above stated), holds that the statute
is unconstitutional because in violation of section 18 of the
Kansas Bill of Rights, which gives to all persons injured in
person, *reputation* or property remedy by due course of law,
such constitutional guarantee being almost identical with
the above-cited section 35, Article I, of the Constitution of
North Carolina. The Supreme Court of Kansas says: "It
will be noted that the questioned statute limits the right of
recovery in cases of libel to actual damages, where, after
service of notice provided in the first section, the publisher
of the newspaper in which the libelous matter has appeared

shall make a full and fair retraction of the libelous matter, coupled with a showing upon the trial that the same was published in good faith, under a misapprehension of the facts; and defines that class of damages to be such as the plaintiff has suffered in respect to his property, business, trade, profession or occupation. So that in such cases the libeled party may not recover all his damage, but he is confined to the narrow class designated and defined in the act as 'actual damages.' The common law recognizes two classes of damages in libel cases—general and special. General damages are those which the law presumes must naturally, proximately and necessarily result from the publication of the libelous matter. They arise by inference of law and are not required to be proved by evidence. They are allowable whenever the immediate tendency of the words is to impair the plaintiff's reputation, although no actual pecuniary loss had in fact resulted, and are designed to compensate for that large and substantial class of injuries arising from injured feelings, mental suffering and anguish, and personal and public humiliation, consequent upon the malicious publication of the false and libelous matter. The injury for which this class of damages is allowed is something more than merely speculative. While not susceptible of being accurately measured in dollars and cents, it is a real one, and more often than otherwise more substantial and real than those designated as actual, and measured accurately by the dollar standard. In short, it is such an injury to the reputation as was contemplated in the Bill of Rights. The law presumes that this class of injuries resulted necessarily from the publication of the libelous matter, and the damages, therefore, were recoverable without special assignment. Special damages were also recoverable when properly pleaded and shown and were such damages as were computable in money, and may be said to be fairly embraced

in the list of actual damages as given in the statute referred to. This was the condition of the law at the time of the adoption of our Constitution, and is now, and all these are the injuries to reputation for which it provided that there should be 'remedy by due course of law.'

"It requires no argument to demonstrate that the act in question does deny remedy for a portion of these injuries. Unless the one libeled has suffered in the particular manner pointed out in the statute, he is remediless. For that other large class of persons and still larger class of injuries, no remedy is found. From the writings of the world's wisest man we have the assurance 'that a good name is rather to be chosen than great riches.' Yet the possessor of this thing of greatest value, being despoiled of it, is left entirely without remedy for its loss by the statute in question, except in such rare cases as he shall be able to show some exact financial injury in the particulars named. We could not excuse ourselves for holding that reputation is less valuable than property, or that it is less protected from spoliation by the quoted provision of the Bill of Rights.

"It is suggested, however, that the retraction required by the act to be published is a fair compensation for the injury done, and a reinvestment of the libeled one with his good name. This being done, all has been accomplished that would be by a verdict of a jury, and hence that the retraction required by the legislative enactment is, if not 'due course of law,' an ample substitute for it. It is not an easy task to deduce either from reason or the authorities a satisfactory definition of 'law of the land' or 'due course of law.' We feel safe, however, from either standpoint, in saying these terms do not mean any act that the Legislature may have passed, if such act does not give to one opportunity to be heard before being deprived of property, liberty or reputation, or having been deprived of either does not afford a

like opportunity of showing the extent of his injury, and give an adequate remedy to recover therefor. Whatever these terms may mean more than this, they do mean due and orderly procedure of courts in the ascertainment of damages for injury, to the end that the injured one 'shall have remedy,' that is, proper and adequate remedy, thus to be ascertained. To refuse hearing and remedy for an injury after its infliction is a small remove from infliction of penalty before and without hearing."

It further says:

"The retraction required by the act in question may or may not be full reparation for the injury suffered. It might the rather aggravate the injury already inflicted than mollify it. It is sufficient to say, however, that all these are questions for the courts upon proper notice to all parties, and may not be determined arbitrarily by an act of the Legislature. * * * It is claimed that admitting the constitutional invalidity of this act because it denies remedy by due course of law, still the Legislature would have a right to require the service of this notice as a step in the procedure in prosecuting an action for the recovery of damages occasioned by libel; this, in order to give the publisher opportunity of retraction for the purpose of mitigating general damages and relieving himself from punitive damages. We do not deny that the Legislature might do this. It seems to us, however, that such was not its purpose and object, but rather that the service of this notice was but a step in the procedure to relieve publishers from all general damages. That object being found unconstitutional, these ancillary matters must go with it."

We have thus copied at some length the discussion of an almost identical statute by the very able Supreme Court of our sister State, because of the clearness and vigor with which it presents our own views upon the subject.

The Supreme Court of Michigan also holds a similar statute unconstitutional, *Park v. Free Press,* 72 Mich., 560, 1 L. R. A., 599, 16 Am. St. Rep., 540, saying:

"We do not think the statute controls the action or is within the power of constitutional legislation. This will, in our judgment, appear from a statement of its effect if carried out. It purports to confine recovery in such cases against newspapers to what it calls 'actual damages,' and then defines actual damages to cover only direct pecuniary loss in certain specified ways, and none other. In some of these defined cases, the proof of any damages in this sense would be impracticable, and in all it would be very difficult. They are confined to damages in respect to property, business, trade, profession or occupation. It is safe to say that such losses cannot be the true damage in a very large share of the worse cases of libel. A woman who is slandered in her chastity is under this law usually without any redress whatever. A man whose income is from fixed investment or salary or official emolument, or business not depending upon his repute, could lose no money directly unless removed from the title to receive his income by reason of the libel, which could seldom happen. If contradicted soon, there could be practically no risk of this. And the same is true concerning most business losses. The cases must be very rare in which a libel will destroy business profits in such a way that the loss can be directly traced to the mischief. There could never be any loss when employers or customers know or believe the charge is unfounded. The statute does not reach cases where a libel has operated to cut off chances of office or emolument in the future, or broken up or prevented relationships not capable of an exact money standard, or produced that intangible but fatal influence which suspicion, helped by ill-will, spreads beyond recall or reach by apology or retraction. Exploded lies are continually reproduced

without the antidote, and no one can measure with any accurate standard the precise amount of evil done or probable. There is no room for holding in a constitutional system, that private reputation is any more subject to be removed by statute from full legal protection than life, liberty or property. It is one of those rights necessary to human society that underlie the whole social scheme of civilization. It is a thing which is more easily injured than restored, and where injury is capable of infinite mischief."

This case has subsequently been approved by the same Court in *McGee v. Baumgartner,* 121 Mich., 287, where the Court holds that "The right to recover in an action of libel for damages to reputation cannot be abridged by statute."

These decisions were by unanimous courts. A contrary view was expressed, but by a divided Court, in *Allen v. Pioneer Press,* 40 Minn., 117, 3 L. R. A., 532, 12 Am. St. Rep., 707, based mainly upon the reasoning that the retraction being required, as it is, to be published as widely and to substantially the same readers, is usually a more complete redress than would be a judgment for damages. But as the Kansas Supreme Court, *ut supra,* well observes, this may or may not be true, and even if true it is not "remedy by due course of law" which section 35, Article I, guarantees that every person shall have through the courts "for an injury to his lands, goods, person or *reputation."* He is entitled by constitutional right to have such injury determined and the amount of just compensation for his wrong settled by a jury of his peers. He cannot be deprived of this by a legislative adjudication, beforehand, that a retraction by the newspaper is full compensation for the injury he has suffered. And even in that case (*Allen v. Pioneer Press*), a new trial was granted because the question of good faith should have been submitted to the jury.

It was therefore error in the Court below to sustain the

third ground of the motion, which construed the statute as restricting the recovery to special damages. Those words are not in our statute, and if they were the statute would be unconstitutional, as we have seen. Besides, as above stated, whether the publication was made in good faith, honest mistake, and with reasonable ground of belief—the conditions which, taken with the retraction, would relieve from punitive damages—is an affirmative defense to be found by the jury upon the evidence. It was error for the Court to find it.

The provision for retraction, construed according to its palpable meaning, as affording opportunity to escape punitive damages only, and when there was good faith, honest mistake, and reasonable ground of belief before publication, is an appropriate remedy, in its terms, for newspapers and periodicals, and could not well apply to others. It applies equally to all newspapers and periodicals, and we do not think it a discrimination forbidden by the Constitution.

The only remaining question is whether the Court was justified in dismissing the action upon the first ground in the motion of the defendant, the News and Observer Publishing Company, for failure to give the five days' notice required before bringing an action of this nature. Such failure was held to be ground for demurrer in *Williams v. Smith,* 134 N. C., 249. The giving of such notice is required only for the purpose of furnishing the defendant opportunity to publish a retraction, the effect of which, as we have seen, could extend no further than to relieve from punitive damages, even when good faith, honest mistake and reasonable ground of belief are shown by the defendant. When such demurrer is sustained the action should not be dismissed, but the Court can still permit, in its discretion, the plaintiff to amend the complaint by averring such notice if it was in fact given, and if it was not, the action is still valid for the recovery of actual damages, *i. e.,* of all except

punitive damages, and it would be error to dismiss it.   In this case failure to give the five days' notice in no wise could affect the defendant, for the additional reason that it actually did make the retraction, to afford the opportunity of doing which is the only reason for requiring the notice.

For the reasons given there must be, as to both defendants, a

New Trial.

DOUGLAS, J., concurring in result. While concurring in the result I feel constrained to say that in my opinion the so-call "Libel Act" is unconstitutional, inasmuch as it discriminates between the editor of a newspaper and the ordinary citizen.   If I write a letter libelling an editor, that perhaps at most *ten* people may see, and he libels me by printing identical charges against me that *ten thousand* people may see, I am subject to pains and penalties from which he is exempted by operation of the statute.   Whatever other merits the act may have, I do not think that such discrimination can be sustained under the explicit provision of our Constitution.   It is, however, due to the Court to say that its opinion eliminates from the act its most dangerous features.

WALKER, J., concurs in result only.

CONNOR, J., did not sit on the hearing of this case.