**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-2101**

---

TIFFANY BASS; PAULA WIGGINS, on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants,

v.

WEINSTEIN MANAGEMENT CO., INC.; WMCI CHARLOTTE XIII, LLC, d/b/a Bexley Village at Concord Mills,

Defendants - Appellees.

----------------------------------

CORTLAND MANAGEMENT, LLC, CROSS POINT NC PARTNERS, LLC.,

Amicus Supporting Appellees.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, District Judge.  (1:20-cv-00916-CCE-JLW)

---

Argued:  September 13, 2022                    Decided:  December 29, 2022

---

Before NIEMEYER and WYNN, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by published opinion.  Senior Judge Floyd wrote the opinion, in which Judge Niemeyer and Judge Wynn joined.

**ARGUED:** Edward H. Maginnis, MAGGINS HOWARD, Raleigh, North Carolina, for Appellants. Mark P. Henriques, WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina, for Appellees. **ON BRIEF:** Scott C. Harris, Patrick M. Wallace, MILBERG COLEMAN BRYSON PHILLIPS & GROSSMAN, PLLC, Raleigh, North Carolina; Karl S. Gwaltney, MAGINNIS HOWARD, Raleigh, North Carolina, for Appellants. Matthew F. Tilley, Michael A. Ingersoll, WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina, for Appellees. Nicole M. Strickler, MESSER STRICKLER BURNETTE, LTD., Barrington, Illinois, for Amici Curiae.

———————

2

FLOYD, Senior Circuit Judge:

Tiffany Bass and Paula Wiggins (collectively, Plaintiffs) brought suit against Weinstein Management Co., Inc., and WMCI Charlotte XIII, LLC (collectively, Defendants). In relevant part, Plaintiffs alleged that Defendants violated the North Carolina Residential Rental Agreements Act (RRAA), N.C. Gen. Stat. § 42-46, and the North Carolina Debt Collection Act (NCDCA), N.C. Gen Stat. § 75-50, by charging them out-of-pocket costs for summary ejectment proceedings, including filing fees, service fees, and attorney's fees (collectively, out-of-pocket expenses). The district court granted Defendants' motion for judgment on the pleadings on these claims, and Plaintiffs now appeal. For the reasons that follow, we affirm the district court.

I.

A.

This case centers on a landlord's ability to charge and recover fees from a tenant in default of her lease under section 42-46 of the RRAA. Relevant here, the North Carolina General Assembly (the General Assembly) amended this provision in 2009, 2018, and 2021. Before 2009, North Carolina law regulated landlords' ability to charge late fees, but it did not restrict their authority to charge other fees or expenses. § 42-46 (2004) (setting parameters for late fees); *see, e.g.*, *Friday v. United Dominion Realty Tr., Inc.*, 575 S.E.2d 532, 536 (N.C. Ct. App. 2003) (permitting an administrative fee to which a lessee assented). In 2009, the General Assembly amended section 42-46 to prohibit landlords from charging "any fee for filing a complaint for summary ejectment and/or money owed

3

other than the ones expressly authorized by subsections (e) through (g)" of the provision. N.C. Gen. Stat. § 42-46(h)(3) (2009). The 2009 amendment limited these authorized fees to a complaint-filing fee, a court-appearance fee, a second trial fee, and reasonable attorney's fees as allowed by law.[1] § 42-46(e)–(g), (h)(3) (2009).

In 2018, the General Assembly amended section 42-26 again. It permitted the same fees as the 2009 amendment, which it characterized as "administrative fees." § 42-46(e)–(g), (i) (2018). It also added the following "out-of-pocket expenses" to the list of authorized charges:

(1) Filing fees charged by the court.

(2) Costs for service of process pursuant to G.S. 1A–1, Rule 4 of the North Carolina Rules of Civil Procedure[,] and G.S. 42–29.

(3) Reasonable attorneys' fees actually incurred, pursuant to a written lease, not to exceed fifteen percent (15%) of the amount owed by the tenant, or fifteen percent (15%) of the monthly rent stated in the lease if the eviction is based on a default other than the nonpayment of rent.

---

[1] Subsection (e) allowed a landlord to charge a complaint-filing fee that could not exceed $15 or 5% of the monthly rent (whichever is greater) only if "the tenant was in default of the lease, the landlord filed and served a complaint for summary ejectment and/or money owed, the tenant cured the default or claim, and the landlord dismissed the complaint prior to judgment." N.C. Gen Stat. § 42-46(e) (2009). Subsection (f) permitted a landlord to charge a court-appearance fee in an amount equal to 10% of monthly rent only if "the tenant was in default of the lease; the landlord filed, served, and prosecuted successfully a complaint for summary ejectment and/or monies owed in the small claims court; and neither party appealed the judgment of the magistrate." § 42-46(f) (2009). Subsection (g) allowed a landlord to charge a second trial fee not to exceed 12% of monthly rent if the landlord proved the tenant was in default of the lease and the landlord prevailed. § 42-46(g) (2009).

N.C. Gen. Stat. § 42-46(i) (2018).  This amendment did not expressly specify whether the legislature intended it to apply retroactively to pending cases or prospectively to cases brought on or after the effective date.

In 2020, the Fourth Circuit held—in an unpublished opinion—that the 2018 amendment substantively altered the rights of landlords and tenants by authorizing the out-of-pocket expenses discussed above for the first time, and therefore, it did not apply retroactively to pending cases.  *Suarez v. Camden Prop. Tr.*, 818 F. App'x 204, 209–10 (4th Cir. 2020).

The General Assembly amended section 42-46 once more in 2021 with a bill entitled "An Act to Clarify and Reaffirm the Statutory Authority of Landlords to Recover Out-of-Pocket Expenses and Litigation Costs in Summary Ejectment Proceedings and to Make Various Changes to the Landlord/Tenant Statutes."  2021 N.C. Sess. Laws 71 (codified at N.C. Gen. Stat. § 42-46 (2021)).  This amendment largely did not modify the substance of the 2018 amendment, as it continued to permit landlords to collect administrative fees and out-of-pocket expenses within the same limits.  2021 N.C. Sess. Laws 71, pt. I, § 1.1 (codified at § 42-46(e)–(g), (i) (2021)).  Most importantly for this case, the amendment stated that "[t]his Part is effective when it becomes law and is intended to apply retroactively to all pending controversies as of that date.  The amendments contained in this Part are intended to be clarifying of the General Assembly's intent under previous amendments to this statute."  N.C. Sess. Laws 71, pt. I, § 1.2.  With this legislative history in mind, we now turn to the facts that gave rise to the instant matter.

B.

Plaintiffs were tenants of a residential property that Defendants owned and managed. On June 6, 2018, they fell behind on their rent, and Defendants charged them a late fee. Plaintiffs then received a letter from Defendants that threatened to evict them and to charge them out-of-pocket expenses associated with the eviction proceedings. A few days later, Defendants charged Plaintiffs these out-of-pocket expenses, which Plaintiffs paid. Plaintiffs' leases permitted Defendants to charge and collect these expenses. However, at the time, the 2009 amendment to section 42-46 was in effect. As discussed above, that version of the provision did not permit landlords to charge and collect these expenses.

In October 2020, Plaintiffs sued Defendants in the North Carolina Superior Court on behalf of themselves and all similarly situated individuals. The same month, Defendants timely removed this action to the Middle District of North Carolina. Plaintiffs then filed an amended complaint, alleging that, by charging them out-of-pocket expenses, Defendants violated the 2009 version of the RRAA. They also asserted a claim under the NCDCA, which prohibits debt collectors from threatening to collect and collecting debt by means not permitted by law. Specifically, they alleged that Defendants' alleged violation of section 42-46 likewise contravened the NCDCA's prohibition on unfair and illegal debt collection practices. Finally, Plaintiffs alleged negligence and negligent misrepresentation. Defendants moved to dismiss. In March 2021, the district court granted Defendants' motion as to the negligence and negligent misrepresentation claims but denied it as to the RRAA and NCDCA claims.

6

After the enactment of the 2021 amendment, Defendants moved for judgment on the pleadings as to the RRAA and NCDCA claims. The district court granted their motion. It reasoned that the 2021 amendment demonstrates a clear legislative intent for retroactive application. Further, because the case involves statutory rights, as opposed to rights under North Carolina common law, the General Assembly could alter these rights at any time before final judgment. The district court concluded that because final judgment had not issued before the 2021 amendment became effective, retroactive application would not violate Plaintiffs' vested rights. Plaintiffs timely appealed.

## II.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). This Court reviews de novo the grant of a motion to dismiss. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). We "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "To survive a motion to dismiss, the complaint's factual allegations must be enough to raise a right to relief above the speculative level—that is, the complaint must contain enough facts to state a claim for relief that is plausible on its face." *King*, 825 F.3d at 214 (cleaned up).

III.

This Court now must decide whether the 2021 amendment applies retroactively without violating vested rights, thereby extinguishing Plaintiffs' RRAA and NCDCA claims. North Carolina law applies to this matter. *See Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008) ("Because we are sitting in diversity, our role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue." (citation omitted)). Under North Carolina law, we first consider whether the General Assembly intended for the 2021 amendment to be retroactive. *See McKiver v. Murphy-Brown*, 980 F.3d 937, 955 (4th Cir. 2020) (addressing the General Assembly's intent regarding retroactivity). If we determine that the legislature intended for the amendment to apply retroactively, we must then decide whether doing so would violate Plaintiffs' vested rights under the North Carolina Constitution. *Williams v. Atl. Coast Line R.R. Co.*, 69 S.E. 402, 403–04 (N.C. 1910).

Plaintiffs argue that retroactive application would violate their vested right in avoiding out-of-pocket expenses, in contravention of the open courts provision of the North Carolina Constitution. Defendants respond that the 2021 amendment evinces a clear legislative intent for retroactive application, and that because Plaintiffs assert statutory rights, the General Assembly could change the scope of those rights at any time before final judgment. As such, retroactive application of the amendment would not infringe the state constitution. Because the RRAA and NCDCA claims both turn on whether Defendants could lawfully charge Plaintiffs out-of-pocket expenses, we address them simultaneously.

A.

First, to decide whether a statutory amendment applies retroactively or prospectively under North Carolina law, we look to the General Assembly's intent. *Childers v. Parker's, Inc.*, 162 S.E.2d 481, 483 (N.C. 1968). North Carolina law presumes that statutes apply only prospectively unless the legislature's intent for the statute to apply retroactively "is clearly expressed or arises by necessary implication from the terms of the legislation." *North Carolina v. Green*, 514 S.E.2d 724, 727 (N.C. 1999); *see also McKiver*, 980 F.3d at 955 ("Both federal and North Carolina courts maintain a longstanding presumption against retroactive application of legislation." (citations omitted)).

"The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act, and what the act seeks to accomplish." *McKiver*, 980 F.3d at 955 (quoting *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, 794 S.E.2d 785, 792 (N.C. 2016)). "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *North Carolina v. Ward*, 694 S.E.2d 729, 731 (N.C. 2010) (citation omitted). Here, the 2021 amendment's text provides that it "is effective when it becomes law and is intended to apply retroactively to all pending controversies as of that date." N.C. Sess. Laws 71, pt. I, § 1.2. Given this

9

explicit language from the General Assembly, the intent of the legislature to apply the 2021 amendment retroactively could not be clearer.[2]

## B.

Second, we must consider whether applying the 2021 amendment retroactively violates Plaintiffs' vested rights under the North Carolina Constitution.

## 1.

"A vested right of action is property in the same sense in which tangible things are property, and is equally protected against interference." *Williams*, 69 S.E. at 403 (citation omitted). Therefore, if the retroactive application of a statute would destroy a vested right, courts must construe the statute prospectively regardless of legislative intent. *Id.*

When a right vests depends on its source. "There is a well-recognized and well-established distinction between cases where the cause of action is created by statute and cases where the cause of action rests upon or grows out of the principles of the common law." *Id.* A common-law cause of action vests upon injury, as does a statutory right that codifies or governs a right "founded upon well-established principles of the common law."

---

[2] Along these lines, the parties dispute whether the 2021 amendment clarifies or alters section 42-46. "A clarifying amendment, unlike an altering amendment, is one that does not change the substance of the law but instead gives further insight into the way in which the legislature intended the law to apply from its original enactment." *Ray v. N.C. Dept. of Transp.*, 727 S.E.2d 675, 681 (N.C. 2012) (citation omitted). As such, clarifying amendments "apply to all cases pending . . . when the amendment is adopted." *Id.* (citation omitted). We need not resolve this dispute, however, because the General Assembly explicitly stated its intent for the 2021 amendment to apply retroactively.

*Id.* at 404. Therefore, any statute limiting or repealing a common law right cannot apply retroactively to pending cases asserting such a right. *Id.* at 403–04.

By contrast, a purely statutory cause of action furnishes "an inchoate right subject to be defeated by express legislative action." *Id.* at 403 (citation omitted). Thus, if a plaintiff asserts a right created by statute, that right merely constitutes a "favor conferred by legislative act" that the legislature "may, by express terms, take away" at any time before final judgment. *Id.* (citation omitted). If the legislature does not repeal the right during the case's pendency, and the plaintiff prevails, then the right vests at final judgment. *Id.* at 403–04.

In a seminal North Carolina Supreme Court case on this subject, *Dyer v. Ellington*, the plaintiff brought a claim against his town's commissioners under a public-disclosure statute that enabled anyone to seek a monetary penalty against officials who failed to timely publish certain taxes and expenditures. 36 S.E. 177, 177 (N.C. 1900). While the case was pending, the legislature passed a statute that immunized the commissioners from the penalty. *Id.* at 178. For that reason, the court held that the legislature had destroyed the plaintiff's cause of action before it vested at final judgment. *Id.*

According to Plaintiffs, *Dyer* and its progeny stand for the limited proposition that the General Assembly can retroactively revoke or amend statutes that create penalties, but it cannot retroactively revoke or amend statutes that aim to compensate plaintiffs. Defendants respond that the case shows that statutory rights, regardless of their purpose, do not vest until final judgment.

Defendants are correct. The North Carolina Supreme Court has consistently relied

11

on *Dyer* for the notion that "[t]he Legislature may alter a provision of law at any time before the rights of parties are settled. . . .  A right is vested when judgment is entered[,] . . . [and] no subsequent repeal can invalidate it." *Blue Ridge Interurban R.R. Co. v. Oates*, 80 S.E. 398, 399–400 (N.C. 1913) (citations omitted) (cleaned up); *see also Williams*, 69 S.E. at 403 (same).[3]  This jurisprudence refers to statutory causes of action generally, without differentiating between statutory rights to penalties and statutory rights to compensatory damages.[4]

Of course, a legislature cannot retroactively revoke or amend a cause of action that "rests upon or *grows out of the principles of common law*," including statutes that codify common-law rights. *Williams*, 69 S.E. at 403 (emphasis added) (citation omitted).  In *Williams*, for example, the plaintiff was expelled from a train for refusing to pay a ticket price that exceeded the statutory cap. *Id.* at 402.  After the plaintiff filed suit, the General Assembly repealed the price-fixing statute and immunized railroads from any pending or future violations thereof. *Id.*  The court ultimately refused to apply the immunizing

---

[3] Like common-law rights, the legislature cannot retroactively revoke or amend contractual rights, either. *Williams*, 69 S.E. at 403.  But that exception does not apply here. Plaintiffs do not assert rights under their lease or any other contract, and in any event, the lease permitted Defendants to charge the challenged expenses.

[4] Plaintiffs highlight that *Williams* specifically mentions statutory causes of action for penalties (as opposed to those for compensatory damages) in its explanation of when statutory rights vest.  69 S.E. at 403.   However, the *Williams* court did not treat this distinction as legally significant. *Id.*  Rather, it briefly mentioned penalties to provide an example of a statutory right that the North Carolina Supreme Court had previously considered in the retroactivity context. *Id.* ("Where the right has been asserted during the life of the statute, *as for instance* an action instituted to recover a penalty . . . ." (emphasis added)).

amendment retroactively to the plaintiff's case. *Id.* at 404. It concluded that, although the statute rendered the defendant's prices (and thus the plaintiff's ejectment from the train) wrongful, the right that the plaintiff sought to vindicate and the alleged wrong that the defendant committed were "founded upon well-established principles of the common law." *Id.* at 404. In other words, the *Williams* plaintiff alleged a tort claim for his wrongful ejectment that merely implicated the price-fixing statute. *Id.* at 404.

Relatedly, as Plaintiffs point out, we recently held that an amendment to North Carolina's Right to Farm Act (RTFA) that limited compensatory damages for permanent and temporary nuisances did not apply retroactively. *McKiver*, 980 F.3d at 957–58. We reasoned that "the right to compensatory damages 'vest[s] in a plaintiff upon injury.'" *Id.* at 958 (citation omitted). But that case concerned the statutes that governed "the damages available in private *common law* actions for nuisance." *Id.* at 957 (emphasis added). Here, by contrast, Plaintiffs assert a purely statutory right under section 42-46.[5] Thus, the 2021

---

[5] To be sure, the Supreme Court of North Carolina has recognized an "inherent" or common-law right to recoup unlawful fees. *Quality Built Homes Inc. v. Town of Carthage*, 813 S.E.2d 218, 228 (N.C. 2018); *see also Smith Chapel Baptist Church v. City of Durham*, 517 S.E.2d 874, 882 (N.C. 1999) (holding that plaintiffs who sought a refund of invalid stormwater utility fees resembled "the common law doctrine of an action for money had and received"). Specifically, when a statute prohibits certain fees but does not "provide an explicit statutory right to seek recovery" of them, then a plaintiff who was wrongfully required to pay such a fee must rely on her common-law right of recoupment for recovery. *Quality Built Homes*, 813 S.E.2d at 228.

Section 42-46 indeed does not create a right to seek recovery of any unlawfully charged fees. But that does not preclude the retroactive application of the 2021 amendment, as Plaintiffs seek to recover the challenged expenses under the NCDCA's statutory remedies, not the common law. The NCDCA prohibits debt collectors from collecting or attempting to collect a debt by "unfair acts," like "[t]hreatening to take any action not permitted by law," § 75-51(8), or "fraudulent, deceptive[,] or misleading

13

amendment can apply retroactively to their claims without encroaching upon vested common law rights.

2.

Plaintiffs further posit that retroactive application of the 2021 amendment would violate the open courts provision of the North Carolina Constitution. This argument fails, as well. The open courts provision provides in pertinent part that "[a]ll courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18. Plaintiffs rely on *Committee to Elect Dan Forest v. Employees Political Action Committee*, 853 S.E.2d 698 (N.C. 2021), a recent case interpreting this provision, to support their argument. There, the North Carolina Supreme Court effectively held that the state constitution's standing requirements are more relaxed than the federal requirements. *Forest*, 853 S.E.2d at 733. Specifically, the *Forest* court reasoned that, under North Carolina law, "standing . . . is motivated by a pragmatic and functional concern with ensuring 'concrete adverseness' that 'sharpens the presentation of issues.'" *Id.* at 725. Thus, "the infringement of a legal right" arising under common law, a statute, or the state constitution gives rise to standing under the open courts provision.

---

representation," § 75-54. It authorizes the recovery of actual damages and civil penalties, in addition to any other available remedies. § 75-56(b)–(c). It also permits treble damages. § 75-16. Accordingly, Plaintiffs seek treble statutory and actual damages, as well as a statutory penalty. At bottom, section 42-26 creates a purely statutory right that Plaintiffs seek to enforce through the NCDCA's purely statutory remedies. The retroactive application of the 2021 amendment therefore does not interfere with a common-law right.

14

*Id.* at 733–34. By extension, when the legislature confers a statutory cause of action on a class of persons, and a plaintiff falls in that class, he has standing to vindicate that cause of action. *Id.* at 733. This remains true even when he suffered no concrete, personal injury in fact, as the federal Constitution requires, and he instead brings the action "solely in the public interest." *Id.*

According to Plaintiffs, *Forest* demonstrates that the North Carolina Supreme Court treats common-law, statutory, and constitutional injuries equally—all causes of action spring into existence and vest immediately upon injury. Consequently, they assert, even if *Dyer* once permitted the retroactive repeal of statutory rights, *Forest* implicitly overruled it.

This argument overstretches *Forest*'s holding. At no point did the *Forest* court rule that statutory injuries are immutable and irrevocable once they occur, or even speak to when a statutory cause of action vests. It merely interpreted the requirements for standing under the North Carolina Constitution, as compared to the federal requirements. Simply put, Plaintiffs put the cart before the horse. The open courts provision guarantees plaintiffs access to a forum to litigate a valid cause of action. *See Forest*, 853 S.E.2d at 733 (holding that the open courts provision guarantees standing when a common-law, statutory, or state constitutional right has been infringed (quoting N.C. Const. art. I, § 18, cl. 2)). But it does not prevent the legislature from invalidating or amending their cause of action before it vests, as here.

Further, Plaintiffs rely on *Osborn v. Leach*, 47 S.E. 811 (N.C. 1904), to argue that abolishing both statutory and common-law causes of action alike violates the open courts

15

provision.  There, the North Carolina Supreme Court considered the constitutionality of its "London Libel Law."  *Id.* at 812.  Under the statute, a plaintiff alleging libel could not recover punitive damages from a defendant newspaper or periodical if the defendant demonstrated that it published the challenged material in good faith, had reasonable grounds for believing the material was true, and issued a timely retraction.  *Id.* at 812–13.  The court concluded that the legislature could abolish the right to punitive damages, but it could not constitutionally abolish the right to recover actual damages.  *Id.* at 813–15.  In dicta, the court explained that abolishing the right to actual damages would destroy the cause of action entirely, in violation of the open courts provision.  *Id.* at 815.

Below, the district court correctly explained that *Osborn*'s statement about the unconstitutionality of abolishing actual damages constitutes dicta, as the North Carolina Supreme Court has twice acknowledged.  *Bass v. Weinstein Mgmt. Co., Inc.*, 2021 WL 4078507, *2 (M.D.N.C. Sept. 8, 2021) (first discussing *Lamb v. Wedgewood S. Corp.*, 302 S.E.2d 868, 882 (N.C. 1983); and then discussing *Forest*, 853 S.E.2d at 731).  Moreover, *Osborn*'s discussion of the abolition of actual damages for libel is of little relevance to this case.  That case involved a challenge to a damages statute, but libel itself constitutes a common-law cause of action.  *Osborn*, 47 S.E. at 812–15.  As discussed above, the North Carolina Supreme Court has repeatedly held that the General Assembly cannot retroactively invalidate common-law rights, which Plaintiffs do not seek to vindicate here.  *See Williams*, 69 S.E. at 403 (differentiating between statutory and common-law rights).  *Osborn* therefore did not preclude the district court from applying the 2021 amendment

16

retroactively.[6]


## IV.

Because the 2021 amendment applies retroactively to Plaintiffs' case without violating vested rights, we affirm the judgment of the district court.

*AFFIRMED*

---

[6] Plaintiffs highlight that certain state and federal courts in North Carolina have rejected the retroactive application of the 2021 amendment in nearly identical cases, but that does not change the outcome of this matter. First, Plaintiffs cite *Smith v. Excel Property Management, Inc.*, No. 20-CVS-872 (N.C. Super. Ct. Nov. 23, 2021), in which the Superior Court of North Carolina declined to apply the 2021 amendment retroactively. However, as Defendants point out, another judge on the same court ruled in line with the district court below in two recent challenges to the assessment of summary ejectment expenses. Defs.' Suppl. Authorities at 2, ECF No. 54. This split in state authority does not persuade us to reverse the district court.

Additionally, Plaintiffs highlight *Lockerby v. Cross Point NC Partners, LLC*, 3:19-cv-00717-MOC-DCK (W.D.N.C. Oct. 25, 2021). There, the court *sua sponte* stayed the case to allow the Fourth Circuit to resolve the instant appeal. Order at 1, *Lockerby*, 3:19-cv-00717-MOC-DCK (W.D.N.C. Oct. 25, 2021), ECF No. 64. Plaintiffs suggest that the court issued the stay because it believed that we would reverse the district court. The *Lockerby* court never expressed or implied such a belief, and that case lends no support to Plaintiffs' argument. *Id.*