JOHN F. HANSON v. WILLIAM J. KREHBIEL.

**No. 13,500.**   (75 Pac. 1041.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Libel—Void Statute.*   Chapter 249, Laws of 1901 (Gen. Stat. 1901, ch. 57b), relating to libel, is unconstitutional and void, being in conflict with section 18 of the bill of rights, in that it denies the right in certain cases to one injured in his reputation to have a remedy therefor by due course of law.

2. ———— *"Remedy by Due Course of Law"—Definition.* "Remedy by due course of law," as used in section 18 of the bill of rights, means the reparation for injury, ordered by a tribunal having jurisdiction, in due course of procedure and after a fair hearing.

3. ———— *Constitutional Right Not Satisfied by Statute.* The right to a remedy by due course of law is not satisfied by the requirement contained in a statute to make specific reparation for the injury done, which reparation is the same in all cases, bears no relation to the injury suffered, and has not been decreed by a tribunal after ascertainment of the extent of such injury.

4. ———— *Statute, if Separable, May be Void in Part.* While one part of a statute may be unconstitutional and void and another part good, this is the case only where the portions are clearly separable and susceptible of separate enforcement; but when it is apparent that the entire faulty enactment is designed to constitute a complete whole, and that one part would not have been enacted except in connection with the other, if a part is found to be bad, the entire statute must fall.

5. LIBEL—*Sufficient Publication—General Damages Recoverable.* A false publication, charging that one had been arrested under an accusation of assault and threatened violence with a pistol, in an attempt to collect a bill, is libelous *per se*, and the libeled one may have general damages, without alleging or proving specific injury.

Error from McPherson district court; M. P. SIMPSON, judge.   Opinion filed March 12, 1904.   Reversed.

*John F. Hanson,* for plaintiff in error.

*P. J. Galle,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: Plaintiff's action was for the recovery of damages occasioned by the publication of an alleged libel. The question of greatest moment involved is the constitutional validity of chapter 249, Laws of 1901 (Gen. Stat. 1901, ch. 57b), which reads as follows:

"SECTION 1. That before any civil action shall be brought for the publication or circulation of a libel in any newspaper in this state, the plaintiff shall, at least three days before filing the petition in such action, serve notice on the publisher or publishers of such newspaper, at the principal office of publication, specifying the statement in said article which is alleged to be false or defamatory. If it shall appear on the trial of such action that said article was published in good faith, that its falsity was due to mistake or misapprehension of the facts, and that a full and fair retraction of any statement therein contained alleged to be erroneous was published in the next regular issue of said newspaper, if a weekly or monthly, or, in case of a daily paper, within three days after such mistake or misapprehension was brought to the knowledge of such publisher or publishers, in as conspicuous a place and type in such newspaper as was the article complained of as libelous, then the plaintiff in such case shall recover only actual damages; provided, that the provisions of this act shall not apply to the case of any libel against any candidate for a public office in this state unless the retraction is made editorially, in a conspicuous manner, at least ten days before election, in case such libelous article was published in a daily paper, and in case such libelous article was published in a weekly or monthly paper, at least fifteen days before the election; provided further, that nothing in this act shall be held to apply to any libel published of or concerning any female person.

"SEC. 2. The words 'actual damages' in the foregoing section shall be construed to include all damages which

the plaintiff shall show he has suffered in respect to his property, business, trade, profession, or occupation, and no other damages whatever.''

This is assailed as being violative of section 18 of the bill of rights, which reads :

''All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay.''.

It will be noted that the statute questioned limits the right of recovery in cases of libel to actual damages where, after service of the notice provided in the first section, the publisher of the newspaper in which the libelous matter has appeared makes a full and fair retraction, coupled with a showing upon the trial that it was published in good faith, under a misapprehension of the facts. This statute also declares that class of damages to be such as the plaintiff has suffered in respect to his property, business, trade, profession, or occupation. So that, in such cases, the libeled party may not recover all his damage, but is confined to the narrow class defined and designated in the act as actual damages.

The common law recognizes two classes of damages in libel cases—general and special. General damages are those which the law presumes must naturally, proximately and necessarily result from the publication of the libelous matter. They arise by inference of law and are not required to be proved by evidence. They are allowable whenever the immediate tendency of the words is to impair the plaintiff's reputation, although no actual pecuniary loss has, in fact, resulted, and are designed to compensate for that large and substantial class of injuries arising from injured feelings, mental suffering and anguish, and personal and public humiliation, consequent upon

the malicious publication of false and libelous matter. The injuries for which this class of damages is allowed are something more than merely speculative. While not susceptible of being accurately measured in dollars and cents, they are real injuries, and often more substantial and real than those designated as actual, and measured accurately by the dollar standard. In short, they are such injuries to the reputation as were contemplated in the bill of rights. The law presumes that this class of injuries results necessarily from the publication of the libelous matter, and the damages, therefore, are recoverable without special assignment. Special damages, also recoverable when properly pleaded and shown, are such damages as are computable in money, and may be said fairly to be embraced in the list of actual damages, as given in the statute referred to. This is the present condition of the law, as it was also at the time of the adoption of our constitution, and these are the injuries to reputation, for which it provided that there should be "remedy by due course of law."

It requires no argument to demonstrate that the act in question denies a remedy for some of these injuries. Unless the one libeled has suffered in the particular manner pointed out in the statute, he is without remedy. For that large class of persons and still larger class of injuries not falling within the provisions of this statute, no remedy is found. From the writings of the world's wisest man we have the assurance that "a good name is rather to be chosen than great riches;" yet the possessor of this thing of greatest value, being despoiled of it, is left by the statute in question entirely without remedy for its loss, except in such rare cases where he may be able to show some exact financial injury in the particulars

named.   We could not excuse ourselves for holding that reputation is less valuable that property, or that by the quoted provision of the bill of rights it is less protected from spoliation.

It is suggested that the retraction required by the act to be published is a fair compensation for the injury done, and a reinvestment of the libeled one with his good name; that, this being done, nothing more could be accomplished by a verdict of a jury, and, hence, that the retraction required by the legislative enactment, if not "due course of law," is an ample substitute for it.

It is not an easy matter to deduce, either from reason or the authorities, a satisfactory definition of "law of the land" or "due course of law."   However, from either standpoint, we feel safe in saying that these terms do not mean any act that the legislature may have passed, if such act does not give to one an opportunity to be heard before being deprived of property, liberty, or reputation, or, having been deprived of either, does not afford a like opportunity to show the extent of his injury and gives no adequate remedy to recover therefor.   Whatever more than this these terms may mean, they do mean due and orderly procedure of courts in the ascertainment of damages for injury, to the end that the injured one "shall have remedy;" that is, proper and adequate remedy, thus to be ascertained.   To refuse hearing and remedy for injury after its infliction is a principle little removed from that of the infliction of penalty before and without hearing.   In *Hoke v. Henderson*, 4 Dev. (N. C.) 1, 15, 25 Am. Dec. 688, Chief Justice Ruffin, in speaking of this point, said:

"Those terms 'law of the land' (or due course of law) do not mean merely an act of the general as-

sembly.   If they did, every restriction upon the legis-
lative authority would be at once abrogated.   For
what more can the citizen suffer, than to be 'taken,
imprisoned, disseized of his freehold, liberties, and
privileges ; be outlawed, exiled, and destroyed ; and be
deprived of his property, his liberty, and his life,'
without crime?   Yet all these he may suffer, if an
act of assembly simply denouncing those penalties on
particular persons, or a particular class of persons be
in itself, a law of the land within the sense of the
constitution.''

Mr. Webster, in the Dartmouth College case, gives
this definition :

''By the law of the land is most clearly intended
the general law ; a law which hears before it con-
demns ; which. proceeds upon inquiry and ' renders
judgment only after trial.   .   .   .   Everything
which may pass under the form of an enactment is
not, therefore, considered to be the law of the land.''
·(*Dartmouth v. Woodward*, 4 Wheat. 519, 581, 4 L. Ed.
629.)

For other definitions, see *People, ex rel. Witherbee,
v. Supervisors*, 70 N. Y. 228 ; *Stuart v. Palmer*, 74 id.
183, 30 Am. Rep. 289 ; *State v. Billings*, 55 Minn. 467,
57 N. W. 206, 794, 43 Am. St. Rep. 525 ; *Burdick v.
The People*, 149 Ill. 600, 36 N. E. 948, 24 L. R. A. 152,
41 Am. St. Rep. 329 ; *Chicago, B. & Q. R. Co. v.
State*, 47 Neb. 549, 66 N. W. 624, 41 L. R. A. 481, 53
Am. St. Rep. 557.

The retraction required by the act in question may
or may not be full reparation for the injury suffered.
It might rather aggravate the injury already inflicted
than mollify it.   It is sufficient to say, however, that
these are all questions for the courts, upon proper no-
tice to all parties, and may not be determined arbi-
trarily by an act of the legislature.   We find that
courts of last resort in two states have passed upon

the constitutionality of acts like the one here discussed. In *Park v. Free Press Co.*, 72 Mich. 560, 565, 40 N. W. 731, 16 Am. St. Rep. 544, 1 L. R. A. 599, the supreme court of Michigan, holding against the constitutionality, said:

"We do not think the statute controls the action, or is within the power of constitutional legislation. This will, in our judgment, appear from a statement of its effect if carried out. It purports to confine recovery in certain cases against newspapers to what it calls 'actual damages,' and then defines actual damages to cover only direct pecuniary loss in certain specified ways, and none other. In some of these defined cases the proof of any damages in this sense would be impracticable, and in all it would be very difficult. They are confined to damages in respect to property, business, trade, profession or occupation. It is safe to say that such losses cannot be the true damage in a very large share of the worst cases of libel. A woman who is slandered in her chastity is under this law usually without any redress whatever. A man whose income is from fixed investment or salary or official emolument, or business not depending upon his repute, could lose no money directly unless removed from the title to receive his income by reason of the libel, which could seldom happen. If contradicted soon, there could be practically no risk of this. And the same is true concerning most business losses. The cases must be very rare in which a libel will destroy business profits in such a way that the loss can be directly traced to the mischief. There could never be any loss when employers or customers know or believe the charges unfounded. The statute does not reach cases where a libel has operated to cut off chances of office or employment in the future, or broken up or prevented relationships not capable of an exact money standard, or produced that intangible but fatal influence which suspicion, helped by ill will, spreads beyond recall or reach by apology or retraction. Exploded lies are continually reproduced with-

out the antidote, and no one can measure with any accurate standard the precise amount of evil done or probable.

"There is no room for holding, in a constitutional system, that private reputation is any more subject to be removed by statute from full legal protection than life, liberty, or property. It is one of those rights necessary to human society that underlie the whole social scheme of civilization. It is a thing which is more easily injured than restored, and where injury is capable of infinite mischief."

This case was subsequently specifically approved by the same court in *McGee v. Baumgartner*, 121 Mich. 287, 80 N. W. 21, where the court said :

"The right to recover in an action of libel for damages to reputation cannot be abridged by statute."

A contrary view was adopted by a divided court in *Allen v. Pioneer Press Co.*, 40 Minn. 117, 41 N. W. 936, 12 Am. St. Rep. 707, 3 L. R. A. 532. The conclusion of the court in this case is based largely upon the reasoning that the retraction, being required to be published as widely and to substantially the same readers as the original, is usually a more complete redress for the injury inflicted than a judgment for damages would be. This, however, is merely an assumption, and may or may not be true ; but even if true, it would not be a "remedy by due course of law," as contemplated in the constitution, as we have already determined. We are well persuaded that the act criticized takes from the libeled person the right of remedy by due course of law for an injury suffered in his reputation, and, hence, is invalid, under the constitutional provision quoted.

The questions in this case arise upon the sustaining of defendant's general demurrer to plaintiff's petition. The petition contained no statement of the service of

the notice as provided in the criticized act, and it is now claimed that, admitting the constitutional invalidity of this act, because it denies remedy by due course of law, still the legislature would have a right to require the service of this notice as a step in the procedure in prosecuting an action for the recovery of damages occasioned by libel, in order to give the publisher the opportunity of retraction for the purpose of mitigating general damages and relieving himself from punitive damages. We do not deny that the legislature might do this. It seems to us, however, that such was not its purpose and object, but rather that the service of this notice was merely a step in the procedure to relieve publishers from all general damages. That object having been found unconstitutional, the ancillary matters must go with it.

It is further suggested that the subject-matter of the alleged libel was not libelous *per se*, and, hence, that the demurrer was properly sustained, the petition containing no allegation of special damages. The libelous matter set out was in the following language :

"A second case was called late this afternoon, in which John F. Hanson, of Marquette, is accued of assault on M. A. Fosberg and Louise Fosberg. It is claimed that in attempting to collect a bill he threatened violence with a pistol. The latter parties are the complaining witnesses. The decision of the case will be announced later."

A libel, in order to be actionable *per se*, and to permit a recovery without allegation and proof of special damages, must contain imputations which tend to subject the libeled one to disgrace, ridicule, or contempt. We are of the opinion that the words here complained of are such. To threaten violence with a pistol might fairly be held to be a sufficient charge,

at least, of an assault, and possibly of a crime of greater gravity.

We find that the court was in error in sustaining defendant's demurrer, and therefore direct that such ruling be reversed, and the case remanded for further proceedings.

All the Justices concurring.