GEORGE MEYERLE, Respondent, v. THE PIONEER PUBLISHING COMPANY, a Corporation, Appellant.

(178 N. W. 792.)

**Libel and slander — general, special, and exemplary damages may be awarded for libel per se.**

1. In an action against a newspaper for publishing an article, libelous per se, the party injured, under constitutional and statutory provisions, may be awarded general, special, and exemplary damages.

**Damages — general damages defined — "actual damages" — compensatory damages.**

2. General damages, considered synonymous with actual or compensatory, and as contradistinguished from exemplary or punitive damages, in an action for libel, are such as the law implies and presumes to have occurred from the wrong complained of. They are such as naturally and necessarily result from the wrong. In actions for libel (or other tort), general damages are such as are not caused by any incidental fact or by the peculiar situation and circumstances of the party, but are the natural and uniform effects of the injury itself.

**Damages — special damages defined.**

3. Special damages, as contradistinguished from general damages, are those which are the natural, but not the necessary, consequences of the act complained of. They are such as actually result from the wrong, but are not such a necessary result that they will be implied by law. In cases of libel (or other tort), it may be said that special damages are such consequences of an injury as are peculiar to the circumstances and condition of the injured party.

**Libel and slander — full retraction does not bar recovery of damages.**

4. Pursuant to § 9652, Comp. Laws 1913, which provides for a demand of retraction concerning the publication of libelous matter in a newspaper prior to the institution of any action for libel, and for an opportunity of retraction in the newspaper, the person injured by a publication libelous *per se* is not limited, although full retraction has been made, to the recovery of only special damages. He may recover his actual or compensatory damages.

**Libel and slander — purpose and effect of statute as to retraction defined.**

5. The evident purpose and intent of such statutes, § 9652, Comp. Laws 1913, considered in connection with the constitutional provisions concerning the right of free speech and publication, and the right of redress for legal wrong occasioned thereby, is to afford an opportunity to mitigate the actual or compensatory damages recoverable, by showing the absence of malicious intent, and to eliminate exemplary damages, by means of a full retraction made, as an element of recovery.

**Libel and slander — allegation of demand for retraction and of special damages unnecessary.**

6. In an action for the publication in a newspaper of an article libelous *per se*, it is not necessary, in order to state a cause of action for at least nominal damages, to allege service of a demand for retraction pursuant to § 9652, Comp. Laws 1913, and to allege special damages.

**Libel and slander — complaint for libel against newspaper held to state cause of action for at least nominal damages.**

7. In an action for libel against a newspaper, where the complaint has failed to allege notice of a demand for retraction under § 9652, Comp. Laws 1913, and has also failed to allege any special damages, and where demurrer has been interposed thereto upon the ground that such complaint does not state a cause of action by reason of such failure, it is *held* that the complaint states a cause of action for at least nominal damages.

Opinion filed June 26, 1920.

Action for civil libel against a newspaper in Morton County, *Nuessle, J.*

The defendant has appealed from an order overruling the demurrer.

Affirmed.

*Sullivan & Sullivan,* for appellant.

Where a cause of action exists only because of special damage suffered by the plaintiff, such damage must be specifically pleaded.   8 Standard Proc. 920; 18 Standard Proc. 921; Williams v. Smith, 134 S. C. 249, 46 S. E. 502.

When the statute reads "before any suit for libel shall be brought," this notice shall be given five days before bringing suit, we cannot give any other construction to it than that this is a condition precedent to the bringing of the suit.   Crocker v. Hartford (Conn.) 66 Atl. 98; Reining v. Buffalo, 102 N. W. 308, 6 N. E. 792; Williams v. Smith, 134 N. C. 249, 46 S. E. 502; Scarborough v. Watson, 140 Ala. 349, 351, 37 So. 281 and cases cited therein.

*M. A. Hildreth,* for respondent.

The complaint states a cause of action.   Patmont v. International C. M. Co. (Minn.) 171 N. W. 302; Tillison v. Robbins, 68 Me. 295; Chase, Torts, p. 124.

In cases where the defamatory words are actionable in themselves, malicious intent in publishing them in always inferred by law, and therefore no proof is necessary.   Newell, Defamation, Slander & Libel, p. 770, § 19; 3 Sutherland Code Pl. Pr. & Forms, p. 2371, § 3914.

In certain classes of cases an action for defamation may be maintained without proof of special damages to the plaintiff; and in these cases the words are said to be actionable *per se.*   Starkie, Slander, 3d Eng. ed. 98.

PER CURIAM.   This is an action for libel.   The defendant has appealed from an order overruling a demurrer to the complaint.   The defendant is engaged in the business of publishing the Mandan Daily Pioneer, a newspaper published at Mandan.   The complaint alleges that on December 16, 1919, the defendant published on the front page of its newspaper the following:

### Would Help the Lord End the World.
Glen Ullin Man Invites Family to One Last Feast under Parental Roof, Buys Shrouds for All—Only Needed Machine Gun.

George Meyerle, sixty years old farmer of Glen Ullin, is so sure the world is coming to an end to-morrow that he decided to help the Lord out

in so far as he personally and his immediate family and their children and wives are concerned.

A wholesale sacrifice by the gun route was all scheduled by Meyerle until some of the members of the family learned of his plans and have interfered.

Some days ago he wrote letters to all the members of his family,—he has six married children,—advising them all to come home and have a last feast before the end of the world, December 17th. ·

Then, it is said, he bought shrouds for himself and all the rest of his family and proposed to-day to anticipate the end of the world by a twenty-four-hour span. He bought a gun and proposed to use it on himself and offered to perform a like service on the rest of the family if they would give their consent. At least, he asked, would they be present at the time of his taking off, meet at the parental home, and under the roof which sheltered them in their youth await the crack of doom.

However, all of the family expressed themselves as being willing to await the trump of Gabriel's horn, and were opposed to believing what some pessimistic professor of starology might predict after a mental aviantic among the planets. His kindly offer to help the Lord bring about the millenium has been courteously refused.

Meyerle believes everything he hears. Huh? Certainly he is an ardent follower of Townley.

It further alleges that such publication was false and defamatory, and that the plaintiff was injured in his good name, fame, and reputation as a citizen and resident of Morton county, in the sum of $10,000. The defendant demurred to this complaint upon the ground that the same did not state a cause of action.

The defendant contends that the failure of the plaintiff to plead a demand for retraction, as required by statute, shows no cause of action. That the statute which requires a demand for a retraction before a suit for libel can be brought against a newspaper allows only special damages whether retraction has been made. That, without a showing of a demand for retraction and a refusal to retract, the plaintiff is limited to special damages to his property, business, trade, profession, or occupation, under the statute. That, furthermore, the complaint is fatally defective because it fails to plead in any manner special damages.

Concerning the demand for retraction, § 9652, Comp. Laws 1913, reads as follows:

"Before any suit for libel can be brought against a newspaper, other than a libel of, or concerning a female, the party aggrieved must, at least three days before filing his complaint, serve notice on the publisher of such newspaper at the principal office of its publication, specifying the statement alleged to be false and defamatory, and then if on the trial it appears that the article was published in good faith, and its falsity was due to a misapprehension in regard to the facts and a full and fair retraction of the erroneous statement was published in the next issue of the paper, or in the case of a daily paper within three days after the mistake was brought to the attention of the publisher, in as conspicuous a place and type as the original article, the plaintiff will be entitled to recover only such damage as he can show he has sustained to his property, business, trade, profession or occupation. But if the libel is against a candidate for office, the retraction must also be made editorially, and in the case of a daily paper at least three days, and in the case of a weekly paper, at least ten days before the election."

The demurrer to the complaint admits allegations of falsity, publication, and notice. 17 R. C. L. 398; 25 Cyc. 468; McCue v. Equity Co-op. Pub. Co. 39 N. D. 190, 167 N. W. 228. The demurrer tests the actionable character of the charge, and will be sustained only where the court must affirmatively say that the publication is incapable of any reasonable construction which will render the words defamatory. 25 Cyc. 468; McCue v. Equity Co-op. Pub. Co. supra. Libel is the false unprivileged publication, by writing, printing, picture, effigy, and other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obliquy, or which causes him to be shunned or avoided, and which causes him to be injured in his occupation. Comp. Laws 1913, § 4552. If the language as charged fairly imputes to the plaintiff such acts of conduct, which would naturally be followed by the consequence named in the statute, it is libelous *per se.* Lauder v. Jones, 13 N. D. 525, 541, 101 N. W. 907. If, as a matter of law, there is any doubt concerning the construction to be placed upon the language used, and if there is doubt upon which reasonable men might differ concerning the effect of the publication of such article, these are matters for the consideration of the jury. Ibid.; McCue v. Equity Co-op. Pub.

Co. supra. In determining the true character and significance of the article, we believe that the jury might find either that it charges an attempt to commit a crime or crimes, or that it charges mental incapacity. In either event pursuant to statute it would be actionable. 25 Cyc. 252, 259, 277; Adams v. Scott, 33 S. D. 194, 145 N. W. 446; Hanson v. Krehbiel, 68 Kan. 670, 64 L.R.A. 790, 104 Am. St. Rep. 422, 75 Pac. 1041; Park v. Detroit Free Press Co. 72 Mich. 560, 1 L.R.A. 599, 16 Am. St. Rep. 544, 40 N. W. 731; 17 R. C. L. 286. See §§ 10,337 and 10,338, Comp. Laws 1913. The article being susceptible of the determination that it is libelous *per se,* the plaintiff, in the absence of the statute requiring a demand for retraction, would be entitled, upon the complaint, to recover in this state all damages to which he would be entitled, including actual or compensatory, and punitive or exemplary.

The questions for consideration, therefore, upon the contentions of the defendant are:

(1) Whether a demand for retraction in an action for libel against a newspaper must be served in all cases; and,

(2) The extent to which the statute applies for the recovery of damages where there has been no retraction or opportunity afforded to make retraction.

The statute prescribes, as above noted, that, where full retraction has been made, the plaintiff will be entitled to recover only such damages as he can show he has sustained to his property, business, trade, profession, or occupation. The contention of the defendant, that such damages refer only to special damages to his property, business, trade, profession, or occupation, is erroneous.

Section 9, N. D. Const. so far as applicable, provides: "Every man may freely write, speak and publish his opinions on all subjects, being responsible for the abuse of that privilege."

Again, § 22, N. D. Const., so far as applicable, provides: "All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay."

By the Constitution, the right of free speech and free publication is guaranteed. By this Constitution, the right of redress for injuries done through the abuse of this privilege is also guaranteed. McCue

v. Equity Co-op. Pub. Co. supra; Park v. Detroit Free Press Co. 72 Mich. 560, 1 L.R.A. 599, 16 Am. St. Rep. 544, 40 N. W. 731; Hanson v. Krehbiel, 68 Kan. 670, 64 L.R.A. 790, 104 Am. St. Rep. 422, 75 Pac. 1041.

This right of redress for injuries done extends, under the Constitution, to a person's reputation, as well as to his land, goods, and person. For a wrong perpetrated upon a person's reputation he may recover his damages. Generally speaking, there are recognized two classes of damages in libel cases, general damages and special damages. The term "general damages" is considered synonymous with actual damages or compensatory damages. Osborn v. Leach, 135 N. C. 628, 66 L.R.A. 648, 650, 47 S. E. 811; 17 C. J. 710. They are such damages that ordinarily result or flow proximately from the publication of a libel. These damages to a person's reputation, although they may not be capable of objective measurement in actual dollars and cents, nevertheless, they are not speculative; they neither require special allegation nor special proof. They are capable of being reduced to money values by reason of the law's presumption that an injury done to a person's feelings, the public shame and disgrace incurred, and the degradation of his reputation, are a substantial loss. These damages are in the nature of a property right; they have been said to constitute property. See 17 C. J. 710, 829, 841; See Newell, Libel & Slander, p. 841; Pratt v. Pioneer-Press Co. 35 Minn. 251, 28 N. W. 708; Cruikshank v. Bennett, 30 Misc. 232, 62 N. Y. Supp. 118; Adams v. Scott, supra; 17 R. C. L. 430, 431; Osborn v. Leach, supra.

Special damages, on the contrary, refer to a special pecuniary loss that may have been sustained on account of the peculiar circumstances and condition of the party injured, but are not such a necessary result that they will be inferred by law from the character of the words used. Hanson v. Krohbiel, supra; Newell, Libel & Slander, p. 849; 17 C. J. 715. Such damages may constitute elements of actual damages. The statute also permits, in libel actions, punitive or exemplary damages. Comp. Laws 1913, § 7145. It also allows the recovery of nominal damages. Comp. Laws 1913, § 7184. See also 17 C. J. 714.

Under the Constitution and statutory provisions, and the principles of law applicable thereto, the statute in question should be given a construction that will render it consistent with the fundamental and

cognate law, and harmonious with the evident purpose and intent for which the statute was enacted.

In Hanson v. Krehbiel, supra, a Kansas statute very similar to the statute quoted herein was considered. Under that statute where a retraction had been demanded of a newspaper libel and a full retraction had been made, the party was limited in recovery to only actual damages suffered in respect to his property, business, trade, profession, or occupation, and no other damages whatever. This statute was held to be unconstitutional. We do not so determine this statute to be unconstitutional. Its evident purpose and intent, in our opinion, is to afford an opportunity to the newspaper against whom the libelous charge is directed to mitigate the actual or compensatory damages recoverable by showing the absence of malicious intent, and also the right, by means of a full retraction made, to eliminate exemplary damages as an element of recovery. It is quite proper for such statute, consonant with the constitutional principles, to permit an opportunity for full retraction for such purposes in the same medium in which the libelous charge has been made. It is plainly evident, therefore, that, regardless of whether a retraction has been fully made or not, the person subjected to a libel *per se* 'is not limited in his recovery to special damages. Although it might be competent for the legislature to prescribe, as a condition precedent, a demand for a retraction in any newspaper libel before any action could be instituted (which question we do not decide), nevertheless, we are satisfied, pursuant to the evident purpose and intent of the statute, that the legislature did' not so intend in the enactment of the statute in question. The question accordingly, of the necessity of serving a demand for retraction, must be considered in connection with the purpose of the statute. This matter has been considered in several states upon similar statutes.

In Clementson v. Minnesota Tribune Co. 45 Minn. 303, 47 N. W. 781, an action was brought against a newspaper for libel. A demurrer was interposed that no cause of action was alleged for the reason that the plaintiff failed to allege a demand for retraction as required by the statute. Justice Mitchell wrote the opinion. In part he states:

"Now it is evident that the sole purpose of this statute in requiring notice to be served before suit is to give the publishers of the paper an opportunity to publish a retraction; and the only effect of the re-

traction, if made, in case it appears on the trial that the article was published in good faith, and that its falsity was due to mistake or misapprehension of the facts, is to prevent the recovery of general damages and limit it to actual damages. The retraction, if made, does not affect in the least the recovery of actual damages. So far as the right to recover such damages is concerned, the service of the notice referred to would be a mere idle and useless ceremony, which the legislature cannot be presumed to have contemplated or intended. Hence, notwithstanding the general language of the first clause of the statute, yet, as it is only the right to recover general damages which the legislature was seeking to limit, and as the service of notice or a consequent retraction can have no possible effect upon the recovery of actual damages, it should be held that the provision as to the service of notice has reference only to a claim for damages of the former class. Hence, as this complaint states a cause of action for actual damages, it was good as against a general demurrer."

See also 17 R. C. L. 392; Foye v. Guardian Printing & Pub. Co. (Cir. Ct. N. Y.) 109 Fed. 369; Hanson v. Krehbiel, 68 Kan. 670, 64 L.R.A. 790, 104 Am. St. Rep. 422, 75 Pac. 1041; Osborn v. Leach, 135 N. C. 628, 66 L.R.A. 648, 650, 47 S. E. 811. The defendant has cited the cases of Williams v. Smith, 134 N. C. 249, 46 S. E. 502, and also Osborn v. Leach, supra, to the effect that a demurrer should be sustained where the demand for retraction, pursuant to the statute, has not been alleged. It is to be noted, however, that, in Osborn v. Leach, decided after the Williams v. Smith case, supra, although the opinion as written so holds, the majority of the court dissented upon this special question, and this majority opinion holds that such notice is required for the purpose of furnishing the defendant an opportunity to publish a retraction, the effect of which extends no further than to relieve from punitive damages. In this regard the court says:

"When such demurrer is sustained, the action should not be dismissed, but the court can still permit, in its discretion, the plaintiff to amend the complaint by averring such notice, if it was in fact given; and, if it was not, the action is still valid for the recovery of actual damages; that is, of all except punitive damages, and it would be error to dismiss it."

To summarize, we are of the opinion:

(1) That the sole purpose of the statute is to give the publisher of a newspaper who, through mistake or misapprehension in regard to the facts, in good faith publishes a libelous article, an opportunity to retract and thereby as far as possible undo the wrong which he unintentionally did to the party libeled.

(2) That it is not the purpose of the statute to take away from the party libeled right to full reparation for the injury he has sustained. The party who unintentionally committed the wrong is merely permitted as far as possible to undo it, and thereby mitigate the damages. But if any damages remain after the retraction has been made, the party libeled is entitled to recover them.

(3) That the only effect of the retraction, if made, is, in case it appears on the trial that the article was published in good faith, and that its falsity was due to mistake or misapprehension in regard to the facts, that the plaintiff will be entitled to recover only whatever damages then remain. That is, in such case the plaintiff will not be entitled to recover exemplary damages; nor will he be entitled to recover any more general or special damages than sufficient to compensate him for the injury remaining unsatisfied after the publication of the retraction.

(4) Whether a complaint like the one before us, which alleges merely general injury to plaintiff's good name and reputation, and does not allege the service of a demand for retraction, sets forth a cause of action for more than nominal damages, is one upon which the majority members are not wholly agreed, and that question is not determined. The majority members, however, are agreed that such complaint, in any event, states a cause of action for nominal damages.

It follows, therefore, that the trial court did not err in overruling the demurrer. The order is affirmed, with costs to respondent.

CHRISTIANSON, Ch. J., and BIRDZELL, and BRONSON, JJ., concur.

GRACE, J. (dissenting). Section 4352, Comp. Laws 1913, provides: "Libel is a false and unprivileged publication, by writing, printing, picture, effigy or other fixed representation to the eye, which exposes any person to *hatred, contempt, ridicule, or obloquy, or which causes*

45 N. D.—37.

*him to be shunned or avoided, or which has a tendency to injure him in his occupation."*

This section sets forth the elements that constitute libel. Unless all these elements are alleged in the complaint, no libel is shown to have occurred. What is written or printed of one may be false; but, if it has not exposed him to hatred, contempt, ridicule, or obloquy, or caused him to be shunned or avoided, or has no tendency to injure him in his occupation, under the statute, there is no cause of libel alleged.

These elements of libel must be alleged in order to state a cause of action, just as in an information charging a crime, the elements of the crime must be alleged in order to legally charge its commission, such as the intent to commit the crime, the acts constituting it, and the injury, if any, resulting therefrom, etc.

Unless these elements are present, there is no libel. There is nothing to show an invasion of a personal right. There is no allegation of injury to support the recovery of any damages; and it must be clear, if there is no injury, there is no damage.

The complaint in this case states none of the elements of libel, as defined by our statute, excepting that the publication was false. This, standing alone, is entirely insufficient to state a cause of action.

The complaint, for another reason, states no cause of action. Section 9652, Comp. Laws 1913, is fully set out in the majority opinion. It requires, before any suit can be brought against a newspaper, other than the libel of or concerning a female, that the party aggrieved must, at least three days before filing the complaint, serve notice on the publisher of such newspaper, at the principal office of its publication, specifying the statement alleged to be false and defamatory; in other words, serving a notice demanding the retraction of the matter claimed to be libelous. No such notice was served in this case, in the manner required by law.

For this reason, the complaint does not state a cause of action. There is no allegation showing any attempt to comply with that statute, so that the rule of liberal construction of a pleading might apply.

The section referred to is all inclusive; it includes each one of all and every suit. It says, "Before any suit"—that means every suit. The word we are to legally define and construe is the word "any." It has been construed in the following cases, to mean what we have above

stated: Hopkins v. Sanders, 172 Mich. 227, 137 N. W. 709; Garrison v. Perkins, 137 Ga. 744, 74 S. E. 541; James v. State, — Okla. Crim. Rep. —, 33 L.R.A. (N.S.) 827, 113 Pac. 226.

There is no cause of action stated in the complaint, for any kind of damages, including nominal damages.

The order overruling the demurrer was erroneous. It should be reversed and the case remanded, with an order to dismiss the same without prejudice to the plaintiff, to bring another action for damages for the alleged libel.

ROBINSON, J. (dissenting). This is an appeal from an order overruling a demurrer to the complaint, which is for newspaper libel. The case is of little consequence; it does not warrant the expense of booking a lengthy decision. In a libel suit the rules of pleading are precisely the same as in any other action. The complaint must state facts sufficient to constitute a cause of action. When it fails to state a cause of action, then, for that reason, the defendant may demur to it. In stating the facts the complaint may aver that the libel was published concerning the defendant, without any colloquium to demonstrate it. Comp. Laws, § 7463. That does not change the rules of pleading; neither are the rules changed by any presumption of law or fact. Presumptions do not aid a complaint which fails to state a cause of action.

The statute does specifically provide that before commencing an action for newspaper libel, except in regard to a female, a notice to retract the libel must be served on the publisher, and then, if he does fairly retract, there can be no recovery in excess of actual damages, which the plaintiff must prove. Laws 1901, chap. 119; Comp. Laws, § 9562. Now as the complaint must state all facts necessary to show a cause of action, in this libel suit it must show that, before commencing the action, a retraction notice was served on the publisher. Otherwise, the retraction statute must be held void.

Here is the gist of the complaint. It avers that the plaintiff, sixty years, and a farmer of Glen Ullin, is so sure the world is coming to an end to-morrow that he has written all the members of his family,—his six children,—advising them to come and have a last supper at the parental home; that he has bought shrouds for himself and his family, and a gun to end the life of himself and the family, if they consent.

It also avers that the libel is false and defamatory. The complaint does not aver that a retraction notice was ever served. It does not aver that the publication was malicious, or that it did the plaintiff any actual injury by causing him pain, sorrow, grief, humiliation, or by causing his neighbors to shun or ridicule him. It avers that the plaintiff was injured in his good name and fame as a citizen and resident of Morton county.

But it is said that the libel is actionable *per se,* and that in such a case nominal damages will be presumed. Hence it is argued that the complaint states a cause of action for nominal damages. That might be true were it not for the statute which provides that the damages must be proven, and not presumed. Under the plain words of the statute, no such action may be commenced without first serving a retraction notice; and if the publisher does fairly retract, the plaintiff is entitled to recover only such damages as he can show he has sustained. The constitutional right to a remedy for all wrongs to person, property, or character means all substantial wrongs. It does not mean that, to recover 10 cents or nominal damages, a party may subject the county to the expense of $100 or $1,000. The policy of the law is to discourage libel suits, because, in general, they are a nuisance to the public and a nuisance to the parties. A suit for $50,000 or $1,000,000 may last for a week or a month and result in a verdict for 6 cents, the same as the famous Ford Case and the Barnes-Roosevelt Case.

The policy of the law is to give freedom to the press, to permit a newspaper to publish items of interest, without incurring the expense and delay of a special investigation, which would bar the publication of proper news items, and, as we have said, the complaint contains no averment that the publication was malicious, and the demurrer does not admit any fact that is not alleged,—and the libel itself contains no fair inference of malice. It does not convey the idea that the publisher knew anything of the plaintiff.

The occasion of the libel was thus: An alleged scientific astrologist in California gave out the item that the world would come to an end on December 17, 1919. In many newspapers the item was published, with comments. It frightened many people and caused some to commit suicide. Since 1841 there has been a religious cult known as Adventists and Seven-Day Adventists. They have been looking for

the millenium and the end of the world at certain scheduled times. Such good people are numerous, and they have many churches, and are quite susceptible to fake reports concerning the millenium. It is quite possible that the plaintiff is some kind of an Adventist, and that his neighbors gave out some such report as was published as a raillery on him. If he is an Adventist, he should not take offense at imputations quite common to those of that creed. If he is not an Adventist, such raillery should be to him as water on a duck's back.

As the plaintiff is a farmer of sixty years, his fame must be local. "It begins and ends in the small circle of his foes and friends." To those who know him the millenium item is no news—no gospel truth; to those who know him not, it is the same as if it referred to a person by any other name.

Certain it is the complaint does not aver malice, it does not aver the service of a retraction notice, it does not show any actual injury to the name or fame of the plaintiff. Hence, it does not state a cause of action.