No. 18,019.

MABEL E. NOAKES *v.* ETHEL M. GAISER
AND PALMER LEE GAISER.
(315 P. [2d] 183)

Decided August 19, 1957.

Mr. THOMAS K. HUDSON, for plaintiff in error.

Mr. H. BERMAN, Mr. NATHAN H. CREAMER, for defendants in error.

The following announcement was made by the Court.

Mr. Justice Day does not participate.

Mr. Chief Justice Moore, Mr. Justice Holland and Mr. Justice Frantz are of the opinion that the judgment should be reversed.

Mr. Justice Knauss, Mr. Justice Sutton and Mr. Justice Hall are of the opinion that the judgment should be affirmed.

The court being equally divided, the judgment of the trial court is affirmed by operation of law.

MR. JUSTICE HOLLAND dissenting:

I dissent from affirmance of the judgment by opera-

tion of law by divided court and in my opinion, the following should be the opinion of the court.

Plaintiff in error, on April 19, 1956, filed a complaint in damages under the guest statute, being C.R.S. '53, 13-9-1, against defendants in error as operator and owner of an automobile in which plaintiff was riding as a guest. Plaintiff sustained severe injuries, details of which are not necessary to here relate, and alleged that the injuries were caused by a collision with another automobile, which collision was the result of defendants' negligence, consisting of willful and wanton disregard of the rights of others.

Defendants, by their answer, allege that the complaint failed to state a claim upon which relief could be granted; that the accident was caused by the negligence of plaintiff, and was contributed to by plaintiff's negligence; and further, that plaintiff assumed the risk of the events that transpired.

Trial was commenced on March 27, 1956, before a jury and at the close of plaintiff's case, defendants moved for dismissal of the complaint and the court sustained this motion and dismissed the complaint. The regular procedure was followed or was dispensed with by order of court and we are asked to reverse this judgment of dismissal on the ground that the court erroneously took the case from the jury and held that as a matter of law, defendants' conduct did not constitute negligence consisting of willful and wanton disregard of plaintiff's rights, since it was for the jury to determine whether defendant driver exceeded the speed limit; failed to stop for an automatic traffic signal; whether or not she had her car under control; whether plaintiff had warned her as to the manner in which she was driving; and finally, whether plaintiff had protested against the manner in which she was operating the car.

On August 1, 1953, plaintiff was a passenger in an automobile being driven by defendant Ethel M. Gaiser; that plaintiff was in the front seat of the automobile on

the right hand side and another passenger was riding in the middle between plaintiff and the driver. The three had been friends for a number of years and had attended a wedding in the morning, and after driving by plaintiff's home and stopping for a few moments, decided to go on some place for lunch. From plaintiff's home they traversed several streets, finally reaching East Colfax avenue and there turned east, and at an intersection stoplight, their automobile crashed into the rear of another car which they had been following for some distance. This vehicle, as shown by the evidence, apparently stopped rather abruptly at the change in the traffic light.

Plaintiff claims that defendant driver was looking to the side of the street for a certain restaurant as they drove along, and that plaintiff cautioned defendant driver a time or two about driving too fast, careless driving and on driving the car and not looking in the direction in which they were traveling, and plaintiff, realizing that the collision was about to occur, told defendant driver to "Watch it," but it was too late. Because this testimony of plaintiff is denied by defendant driver, it raises a jury question and was sufficient to raise the question of defendant driver's willful and wanton disregard of the rights of plaintiff. Our guest statute, C.R.S. '53, 13-9-1, is as follows:

"No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication, or by negligence consisting of a willful and wanton disregard of the rights of others. The provisions of this section shall not relieve a public carrier or any owner or operator of a motor vehicle while the same is being demonstrated to a prospective purchaser, of responsibility for any injuries sustained by a

passenger being transported by such public carrier or by such owner or operator."

The inconceivable terms found in the above statute makes our statute different in some respects to the so-called guest statutes of other states. Witness: " * * * unless such accident shall have been intentional on the part of the owner or operator * * *." If what happened here or in other similar cases was "intentional," then it was not accidental; also, if defendant driver was willfully and wantonly disregarding the rights of plaintiff, then it was not negligence. The use of the word "negligence" in the statute is a meaningless expression that should not pollute the intended sense of the statute.

Defendants' plea or contention that plaintiff was guilty of contributory negligence is without merit. If the contention is made upon the base that plaintiff failed to do the things for her protection, the evidence does not support that contention. Fragments of plaintiff's testimony disclose that she, in different ways, warned defendant driver about not being careful and about not looking where she was going, and it cannot successfully be urged that under the conditions here presented, plaintiff was bound to insist upon alighting from the automobile, because that is extending the requirements too far, besides, plaintiff did not *know* that there would be an accident. It is pertinent to make the further observation that if, as we have said hereinbefore, there is no negligence if the accident or the operation causing the accident was intentional, then it removes the field of negligence, plaintiff could not contribute to something that did not exist.

There was a conflict in the evidence as to whether the acts of defendant driver were willful and wanton, that being so, it was beyond the province of the trial court to determine the question, and it was clearly an issue to be submitted to the jury under definite instructions as to what constitutes willful and wanton disregard of plaintiff's rights. We reiterate that if the acts were negligent,

they were not willful and wanton, but if willful and wanton, they were not negligent.

We fail to understand the allegations of defendants' answer: "Defendants allege that the accident was caused by the negligence of plaintiff." Plaintiff was not in charge of the operation of the automobile and did nothing that interfered with its operation, but for her own protection as a guest, she made sufficient complaint to defendant driver about the careless operation of the vehicle prior to the accident.

In accordance with the views herein expressed, it is my opinion that it was error for the court to dismiss plaintiff's complaint; that the judgment should be reversed and the cause remanded with directions to reinstate the complaint and proceed with the defense if any is to be presented.

MR. JUSTICE FRANTZ dissenting:

I would dissent from an affirmance by operation of law and would reverse the case. Article II, Sec. 6 of the Constitution of the State of Colorado provides: "That courts of justice *shall be open* to every person, and a *speedy remedy afforded for every injury to person,* property or character; and that right and justice should be administered without sale, *denial* or delay." (Emphasis supplied.) This is a constitutional mandate to the court. Even where a constitutional question is not raised by litigants the court has the duty, where a statutory provision affects the jurisdiction and responsibility of the court, to raise the question and dispose of it. The court may not avoid its responsibility by closing its eyes to a patent legislative effort to whittle away what is plainly required of it by the Constitution. Such divestiture of constitutional authority should be scuttled by the court without delay; it should maintain the pristine integrity and vitality of the judicial branch of government as contemplated and fixed by the founding fathers.

The quoted section of the Constitution embraces the principle of natural justice: that in a Republican form of government every man should have an adequate legal remedy for an injurious wrong done to him by another. This constitutional provision is a command to the courts to be open to every person and to afford such person a remedy for injury to him by another, and that such right shall not be denied. A statute contravenes this constitutional provision which would render the court impotent to act where the injunction of the constitutional provision requires that it do act. Where such is manifest, the court ought to declare the invalidity of the law without hesitation, upon its own motion.

One of the most highly regarded rights conferred upon the individual by Magna Charta is the provision that "we will sell to no man, we will not deny to any man, either justice or right." This provision of Magna Charta finds its counterpart in Article II, Sec. 6 of the Constitution of this state and in similar constitutional provisions in a number of other states. The courts of the several states having like provisions have held that its intent and purpose is "to preserve the common-law right of action for injury to person or property, and while the legislature may change the remedy or form of procedure, attach conditions precedent to its exercise, and perhaps abolish old and substitute new remedies * * *, it cannot deny a remedy entirely." *Mateson v. City of Astoria,* 39 Ore. 577, 65 Pac. 1066; *Stewart v. Houk,* 127 Ore. 589, 271 Pac. 998, 61 A.L.R. 1236; *Landis v. Campbell,* 79 Mo. 433, 49 Am. Rep. 239; *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W. (2d) 347; *Lebohm v. City of Galveston,* (Tex. S. Ct.), 275 S.W. (2d) 951; *Taylor v. Hubbell,* 188 Fed. (2d) 106. In other words, the effect of the constitutional provision is this, that frozen into our law are those rights to recovery for injury to person, property or character which existed at the time of the adoption of our Constitution.

This constitutional provision has application to the

legislative and judicial branches of the government; it defines an area in which the legislature and the judiciary may not abrogate, implicitly or explicitly, rights existent at the time of its adoption. *Stewart v. Houk, Supra; First Trust Co. of Lincoln v. Smith,* 134 Nebr. 84, 277 N.W. 762.

In holding invalid a guest statute which provided that:

"No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for any injuries received, death, or any loss sustained in case of accident, unless such accident shall have resulted from an *intentional act* on the part of said owner or operator." (Emphasis supplied.)

Because in contravention of a constitutional provision almost identical with ours, the court said "it was the manifest purpose of the framers of that instrument [the Constitution] to preserve and perpetuate the common-law right of a citizen injured by the negligent act of another to sue to recover damages for his injury." *Ludwig v. Johnson, supra; Van Galder v. Foster,* 243 Ky. 543, 49 S.W. (2d) 352. In these cases the court considered other pertinent constitutional provisions as well.

In the case of *Stewart v. Houk, supra,* the court was called upon to determine the validity of the guest statute of that state which forbade any action by a guest against the owner or operator of a vehicle. What the court there enunciated has pertinence to the instant case. We quote excerpts from the opinion:

"Article 1, § 10, Oregon Constitution, provides: '. . . And every man shall have remedy by due course of law for injury done him in his person, property, or reputation.'

"The purpose of this provision is to save from legislative abolishment those jural rights which had become well established prior to the enactment of our Constitution. Such has been the frequent pronouncement of this

court. * * * The language of Mr. Chief Justice Bean, in Mattson v. Astoria, supra, makes very clear the intent of the foregoing constitutional provision; we quote as follows: 'The constitutional provision guaranteeing to every person a remedy by due course of law for injury done him in person or property is found in the constitutions of many of the states, and means, as said by the Supreme Court of Missouri, "that for such wrongs as are recognized by the law of the land the courts shall be open and afford a remedy" (Landis v. Campbell, 79 Mo. 433, 439, 49 Am. Rep. 239); or, as interpreted by the Supreme Court of Wisconsin, "that laws shall be enacted giving a certain remedy for all injuries or wrongs" (Flanders v. Merrimack, 48 Wis. 567, 575, 4 N.W. 741). *It was intended to preserve the common-law right of action for injury to person or property,* and while the legislature may change the remedy or the form of procedure, attach conditions precedent to its exercise, and perhaps abolish old and substitute new remedies (McClain v. Williams, 10 S.D. 332, 43 L.R.A. 287, 73 N.W. 72; Reining v. Buffalo, 102 N.Y. 308, 6 N.E. 792), it cannot deny a remedy entirely. * * * '

\* \* \*

"It is clear that the purpose of the act before us was to deprive a guest of redress in damages for an injury negligently inflicted upon him by his host if he was being transported without charge. The mere fact that the two did not intend that their legal rights should be such could not alter the situation; likewise the act fixes the above as their legal rights, regardless of the capacity of the parties to contract for themselves. Thus, for instance, a minor below the age of discretion is deprived of redress for an injury inflicted upon him through the negligence of the host; then also the host is freed from liability, even though his negligent act may have been induced by the excessive use of an intoxicant or other similar factor.

"The purpose of the act is thus clear; likewise the con-

stitutional provision needs no further elucidation. And, from the clearly expressed purpose of the latter, it must follow that, if prior to the enactment of the Constitution a host, who transported without charge a guest, owed to the latter a duty to exercise care, and if the law recognized that a breach of that duty, with a resultant injury, afforded the guest a cause of action, this jural right the Constitution preserved against legislative abolishment.

"That the host owed a duty to exercise for his guest's safety due care is not disputed by the defendant, and is well established by the authorities. Shearm. & Redf. Neg. 6th ed. § 653d; Peters v. Johnson, 124 Or. 237, 264 Pac. 459; Rook v. Schultz, 100 Or. 482, 198 Pac. 234; Johnson v. Underwood, 102 Or. 680, 203 Pac. 879; Blashfield, Cyc. of Auto. Law, 955.

"The legislature thus sought to withhold jural significance from a breach of duty which previously was regarded as a cause of action. *But the purpose of the constitutional provision was to safeguard those ancient rights, and preserve as enforceable causes of action any breach of them which resulted in injury to another. The two purposes being in conflict, the Constitution must prevail.*" (Emphasis supplied.)

Of equal force is the language in the case of *Eastman v. Clackamas County*, 32 Fed. 24, in which the court said:

"Section 10 of article 1 of the constitution of the state provides: 'no court shall be secret, but justice shall be administered openly and without purchase, completely and without delay; and *every man shall have remedy by the course of law for injury done him in person, property, or reputation.*' In my judgment, the latter clause of this section has an important bearing on this case. To begin with, it may be admitted that the remedy guaranteed by this provision is not intended for the redress of any novel, indefinite, or remote injury that was not then regarded as within the pale of legal redress. But whatever injury the law, as it then stood, took cog-

nizance of and furnished a remedy for, every man shall continue to have a remedy for by due course of law. When this constitution was formed and adopted, it was and had been the law of the land, from comparatively an early day, that a person should have an action for damages against a county for an injury caused by its act or omission. If this then known and accustomed remedy can be taken away in the face of this constitutional provision, what other may not? Can the legislature, in some spasm of novel opinion, take away every man's remedy for slander, assault and battery, or the recovery of a debt? and, if it cannot do so in such cases, why can it in this?"

Of similar import is the language of Mr. Justice Butler in his concurring opinion in the case of *Denver v. Taylor,* 88 Colo. 89, 292 Pac. 594, in which he pointedly commented:

"The Constitution of Colorado (art. 2, §6) provides, 'That courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character * * * .' The Constitution of Missouri has substantially the same provision, and its statute concerning notice is similar to the provision in the Denver charter. In *Randolph v. Springfield,* 302 Mo. 33, 257 S.W. 499, it was held that a failure to give the notice within the statutory time does not relieve a municipality from liability to one who, by reason of his physical or mental disability, is unable to give notice within the specified time. It was said that to so construe the statute as to bring about that result would be unthinkable, especially where such inability was the result of 'the negligence of the city which injured him,' and that such construction would bring the statute into conflict with the Constitution. The court also said: 'In the case at bar, *the plaintiff had a right of action at common law as soon as she was injured by the city. No act of the Legislature would be valid which clogged or encumbered her right to enforce such common-law right with impossible con-*

*ditions,* such as to require her to give notice when she was physically or mentally incapable of so doing, or other conditions impossible of performance, without her fault.'

"To adopt the strict rule, which we should decline to do, would be equivalent to offering this suggestion to municipalities: If you are negligent on any occasion, see to it that your negligence is sufficiently gross to insure the complete physical and mental disability of the victim; for by doing so, you will avoid the necessity of paying damages, which you would be required to pay if the victim were left in possession of his faculties." (Emphasis supplied.)

The guest statute of this state does not merely "clog or encumber" an enforceable common-law right; it attempts to wholly deny such right.

A charter provision exempting the city from liability for any injury on account of the condition of any street, but not exonerating any officer of the city when the accident was caused by his willful neglect, gross negligence or willful misconduct was struck down by the court in *Batdorff v. Oregon City,* 53 Ore. 402, 100 Pac. 937, 18 Ann. Cas. 287, as being violative of the same constitutional provision.

Under varying circumstances invalidity has been decreed by other courts where this constitutional provision has been invoked. An act exempting trade unions and employers' associations and members and officers thereof from liability for tortious acts committed by them was invalidated in *In re Opinion of the Justices,* 211 Mass. 618, 98 N.E. 337; a statute which limited the right of recovery in cases of libel to actual damages where a fair retraction of the libelous statement was made was held to be violative of such constitutional provision in *Hanson v. Krehbiel,* 68 Kan. 670, 75 Pac. 1041, 64 L.R.A. 790, 104 Am.St.Rep. 422; *Park v. Detroit Free Press Co.,* 72 Mich. 560, 40 N.W. 731, 1 L.R.A. 599, 16 Am.St.Rep. 544; a statute which provided that in

actions for libel and slander, if it shall appear that the publication was in good faith through mistake of fact, with reasonable ground for believing that the statements were true, and the publisher on demand and within a reasonable time published a full and complete retraction in a manner as public as that in which the original publication was made, the presumption of malice shall be rebutted, even when construed as meaning that it is optional with the person maligned to stand on his rights under the old law, or to waive a part by demanding and accepting a retraction under the amended law, was held to offend the constitutional provision in *Byers v. Meridian Printing Co.,* 84 Oh. St. 408, 95 N.E. 917, 38 L.R.A. N.S. 913; a statute prohibiting the bringing of actions for alienation of affections, criminal conversation, or breach of contract to marry was declared to be an infringement of the rights guaranteed by this constitutional provision in Heck v. Schupp, 394 Ill. 296, 68 N.E. (2d) 464, 167 A.L.R. 232; a statute authorizing cities to exempt themselves from liability for damages in certain activities, under which the City of Amarillo acted, was held violative of a similar section of the Constitution in *City of Amarillo v. Tutor,* 267 S.W. 697 (Tex. Com. App.); a city charter provision exempting the city from liability for injury caused by defective streets was for the same reason declared invalid in *Lebohm v. City of Galveston,* supra; a rule of the police department of a city forbidding a police officer from asserting a claim against a third party without first obtaining permission from the department so to do was held to be in conflict with this constitutional guaranty in *State v. Barry,* 123 Oh. St. 458, 175 N.E. 855, 74 A.L.R. 497.

The guest statute of this state, C.R.S. '53, 13-9-1, in effect provides that no person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for

injury, death or loss in case of accident, caused by the simple negligence of such owner or operator. The statute in effect declares that an owner or operator of a vehicle has no duty to exercise the care and caution of an ordinarily prudent person in respect to such guest; it in essence sets forth the proposition that an owner or operator may negligently drive his vehicle and cause injury and damage to his guest without liability. These are the stark realities of the statute.

The overwhelming weight of authority sustains this type of legislation on the theory that it finds sanction in the proper exercise of the police power. See 111 A.L.R. 1011. The compelling idea for the sanction of such legislation is the notion that guests have been guilty of collusion, fraud and bad faith in advancing claims. In other words, presumatively guest and host frequently connive in the pressing of claims in order to mulct the insurance carrier. Admittedly, such instances have occurred and will occur, but what should be done with the great number of bona fide claims based upon negligence? Such presumption of dishonorable conduct on the part of host and guest is contrary to the presumption generally prevailing of fair dealing and common honesty. *People v. Texas Co.*, 85 Colo. 289, 275 Pac. 896.

We render threadbare the fundamental fabric of government, our Constitution, if we sanction legislation such as the guest statute. The langauge of our Constitution is significant; and if we would but seek we may seize the profoundest and most far-reaching meaning, by turning over each familiar word, and looking at it in the light of the primitive idea it was used to designate. Such quest for meaning would go far in restoring vigor and vitality to this fundamental document.

Court should fend the blow directed at their constitutional authority; instinctive self-preservation requires this; respect for, and the duty to uphold, the Constitution

make judicial action to thwart curtailment of constitutionally imposed power mandatory.

In my view of this case, it should be reversed for a trial on the ground of simple negligence.