UNITED STATES of America, Plaintiff,

v.

Roscoe Emory DEAN, Jr. and John Thomas Bigley, Defendants.

No. CR480–13.

United States District Court,
S. D. Georgia,
Savannah Division.

May 19, 1981.

William T. Moore, Jr., U. S. Atty., William H. McAbee, II, Asst. U. S. Atty., Savannah, Ga., for plaintiff.

Thomas R. Taggart, Savannah, Ga., John F. Evans, Miami, Fla., for defendants.

## ORDER

B. AVANT EDENFIELD, District Judge.

Before the Court in this criminal action is the application of the American-Savannah Broadcasting Company, d/b/a WTOC–TV, to copy and telecast certain audio tapes which were used in the trial of defendants Dean and Bigley. Also before the Court is the motion of Mr. Dean to dismiss this application. After careful consideration of the competing interests involved, it is the view of this Court that the present application must be granted. The bases for this conclusion are developed below.

### Background

Defendant John Thomas Bigley was convicted in this Court by a jury verdict returned May 14, 1980, of conspiracy to import marijuana, cocaine, and methaqualone, and of unlawfully carrying a firearm. At the same trial, defendant Roscoe Emory Dean, Jr. was convicted of conspiracy to import marijuana, cocaine and methaqualone. Sentence was imposed by the Court on June 18, 1980. Defendants are presently on bond pending resolution of appeals of their convictions.

At trial certain tape recordings were introduced into evidence in support of the charges against defendants. These tapes

covered conversations between the defendants and other parties which were at points highly significant to the cases against them. Of course, not all portions of the tapes were necessarily relevant to the charges against defendants nor even admissible as evidence. Moreover, these tapes were subjected to strenuous objection from the defendant Dean based on alleged technical irregularities. Legal infirmity was also claimed based on an alleged attorney-client relationship between Mr. Dean and the chief government informant. Both of these arguments were rejected at trial. Counsel informs the Court that they have been renewed on appeal.

### Arguments Presented

By his application of October 21, 1980, movant American-Standard Broadcasting Company has requested opportunity to inspect and copy prosecution exhibits 5–12 and 14–32, consisting of certain of the audio tapes described above. Movant bases this request upon what it describes as a vital interest in public scrutiny of the conduct of persons such as Mr. Dean who has held public office. Movant also relies upon the general common law right of the public to inspect and copy judicial records.

While the government takes no position in this matter, defendants Dean and Bigley have objected strenuously to release of these tapes. Mr. Dean has provided the more detailed discussion of the legal bases of his position. These arguments generally take notice of the fact that this case is still under appellate review. Thus, defendants' contentions with respect to the need for scientific testing of the tapes and application of the attorney-client privilege to portions of their contents have not yet been fully disposed of. Defendants also contend that their interests in a fair and impartial jury should a retrial be ordered would be seriously compromised by broadcast of the tapes.

### Analysis

■ This case requires the Court to apply established principles of common law to a new context and a new technology. There is no question that the courts of the United States have long recognized a general right to inspect and copy public records and documents including judicial materials. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1977). However, it is also beyond serious dispute that this right to inspect and copy is not absolute. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.,* at 598, 98 S.Ct. at 1312. Thus, courts have declined to permit records to be used "to gratify private spite or promote public scandal" by exposing unpleasant details of a divorce case. *In re Caswell,* 18 R.I. 835, 836, 29 A. 259 (1893). Similarly, courts have declined to serve as reservoirs of libelous statements for press consumption or sources of business information which might damage a litigant's competitive position. *See, e.g., Park v. Detroit Free Press,* 72 Mich. 560, 568, 40 N.W. 731 (1888); *Flexmir, Inc. v. Herman,* 40 A.2d 799, 800 (N.J.Ch.1945). Thus, while there is no comprehensive definition of the contours of the right, it is well established that a trial court has broad discretion to grant or decline access depending on "the relevant facts and circumstances of a particular case." *Nixon, supra,* 435 U.S. at 599, 98 S.Ct. at 1312–13.

■ Since the *Nixon* decision, several courts have faced the problem of whether release of recorded materials should be permitted in a specific fact situation. Thus, in *United States v. Myers,* 635 F.2d 945, 2nd Cir. 1980, the Second Circuit considered and affirmed a district court order permitting the National Broadcasting Company's request to copy and televise video tapes made in connection with the so-called Abscam investigation into political corruption. In this determination, the court balanced the interests of criminal defendants in a fair trial of their pending cases against the public right to access. The Court noted specifically the ruling of the Court of Appeals for the District of Columbia that possibility of

prejudice at a hypothetical second trial was too speculative to support impairment of public access to certain audio tapes. *United States v. Mitchell*, 551 F.2d 1252, 1261 (D.C. Cir.1976), *rev'd on other grounds sub nom. Nixon, supra.* The court then went on to conclude that generally public access was to be preferred even in a pending suit where there was no "significant risk of impairing the integrity of the evidence or interfering with the orderly conduct of the trial." *Myers,* at 952.

More recently, at least two other appellate opinions have also considered and endorsed the propriety of releasing video and audio tapes associated with the "Abscam" investigations. In *United States v. Criden,* 648 F.2d 814 (3rd Cir. 1981), *rev'g* 501 F.Supp. 854 (E.D.Pa.1980), the Third Circuit determined that the possibility of a retrial of the involved defendants was insufficient to support refusal of the request of the National Broadcasting Company, Inc. for access to these recordings. The court thus concluded that problems such as the difficulty in empaneling an impartial jury and the fact that not all the recordings were necessarily admissible into evidence were insufficient to overcome the "strong presumption that material introduced into evidence at trial should be made reasonably accessible in a manner suitable for copying and broader dissemination." 648 F.2d at 823. Only one week later, a similar result was reached by the United States Court of Appeals for the D.C. Circuit. *In re Application of National Broadcasting Company, Inc.,* 653 F.2d 609 (D.C.Cir.1981).

This Court is, of course, strongly supportive of the rights of the public to information regarding the functioning of the judicial system, as well as the conduct of public officials. I am also well aware of the central role of the press in developing public awareness. Indeed, this principle was the basis of the Court's denial of defendants' motion to bar the press from trial in this case. *See* Order of February 20, 1980. While I certainly share the defendants' concern that their rights may indeed be threatened by broadcast of the materials in question, the repeated holdings of the various appellate courts discussed here, make it obvious that the defendants' concerns are insufficient to support denial of movant's application. Faced with the authority set forth, I feel the conclusion is dictated; such a result would not be reached by this Court otherwise. Motion for access to the tapes in question must therefore be approved.

*Conclusion*

For the reasons discussed above, motion to copy and broadcast the tapes in question is hereby granted. Movant is directed to submit to the Court a detailed explanation of means by which this copying may be carried out with due regard for avoiding damage to these recordings.